Filed 5/9/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re I.J. et al., Persons Coming Under the Juvenile Court Law. | ) ) ) ) | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ) ) ) ) ) | S204622 |
| Plaintiff and Respondent, | ) ) | Ct.App. 2/8 B237271 |
| v. | ) ) | Los Angeles County Super. Ct. No. CK 59248 |
| J.J., | ) ) ) | |
| Defendant and Appellant. | ) ) | |

The Court of Appeal upheld a juvenile court's finding that a father sexually abused his daughter over a three-year period. It further held that this finding supports the determination that the daughter and her younger sister are dependents of the court under Welfare and Institutions Code section 300. Those questions are not before us. Rather, we must decide whether a father's sexual abuse of his *daughter* supports a determination that his *sons* are juvenile court dependents when there is no evidence the father sexually abused or otherwise mistreated the boys, and they were unaware of their sister's abuse before this proceeding began.

We conclude that a father's prolonged and egregious sexual abuse of his own child may provide substantial evidence to support a finding that all his children are juvenile court dependents.

# I. FACTS AND PROCEDURAL HISTORY

We take these facts largely from the majority opinion in the Court of Appeal.

J.J. (father) is the father of two daughters and three sons. On August 8, 2011, the Los Angeles County Department of Children and Family Services (Department) filed a petition alleging that all five children — daughters who were then 14 and nine years old, twin 12-year-old boys, and a boy who would soon turn eight years old — were dependents of the juvenile court under Welfare and Institutions Code section 300.[1] The petition alleged that father had sexually abused I.J., the older daughter, and that the abuse also placed the younger siblings at risk of harm. Regarding the younger siblings, the petition cited section 300, subdivisions (b) (failure to protect), (d) (sexual abuse), and (j) (abuse of sibling). Father denied the allegations of sexual abuse.

The juvenile court sustained allegations that on August 2, 2011, "and on prior occasions for the past three years," father sexually abused I.J. "by fondling the child's vagina and digitally penetrating the child's vagina and forcefully raped the child by placing the father's penis in the child's vagina. On prior occasions, the father forced the child to expose the child's vagina to the father and the father orally copulated the child's vagina. On a prior occasion, the father forced the child to watch pornographic videos with the father. [I.J.] is afraid of the father due to the father's sexual abuse of [I.J.]. The sexual abuse of [I.J.] by the father endangers [I.J.'s] physical health and safety and places the child and the child's siblings . . . at risk of physical harm, damage, danger, sexual abuse and failure to protect."

---

[1]      Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

There is no evidence or claim that father sexually abused or otherwise mistreated his three sons, and the evidence indicates that they had not witnessed any of the sexual abuse and were unaware of it before this proceeding began. The boys said they felt safe in the home and liked living with their parents.

After sustaining the factual allegations, the juvenile court declared all the children dependents of the court. It found, "by clear and convincing evidence, . . . that there is a substantial danger to the children, if returned to the home, to the physical health, safety, protection, physical, emotional well-being of the children, and there are no reasonable means by which the children's physical health can be protected without removing the children from the father's custody in this case." It removed the children from father's custody, and ordered them placed with their mother under the Department's supervision. The court ordered visits for father monitored by someone other than the mother, and ordered father to attend a "program of sex abuse counseling for perpetrators" and to undergo family counseling.

Father appealed. The Court of Appeal unanimously held that the evidence was sufficient to support the juvenile court's finding that father had sexually abused I.J., and that the abuse supported the court's declaring I.J. and her sister to be dependants of the court. It divided on the question of whether the abuse also warranted the court's further declaring her brothers to be dependents of the court. The majority, in an opinion by Justice Grimes, joined by Presiding Justice Bigelow, upheld the jurisdictional finding. Justice Flier dissented, arguing that father's sexual abuse of his daughter, without more, did not warrant the court's assuming jurisdiction over his sons.

We granted father's petition for review to decide whether his abuse of his daughter supported the court's declaring his sons to be dependents of the court.

3

## II. DISCUSSION

The Court of Appeal unanimously held that the evidence supports the juvenile court's finding that father abused his daughter. That holding is not before us on review and, accordingly, we accept the Court of Appeal's conclusion in this regard. (See *People v. Weiss* (1999) 20 Cal.4th 1073, 1076-1077.) Father contends, however, that evidence that he sexually abused his daughter does not support the juvenile court's finding that his sons are dependents of the court under section 300.

Section 300 begins: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court . . . ." Then follow several subdivisions describing children who may be adjudged dependents of the court. The Department alleged that the younger siblings, including the sons, come within three of these subdivisions: subdivision (b) ("The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ."); subdivision (d) ("The child has been sexually abused, or there is substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent . . . ."); and subdivision (j) ("The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions.").

The Department has the burden of proving by a preponderance of the evidence that the children are dependents of the court under section 300. (§ 355, subd. (a); see *In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.)

The Court of Appeal below correctly stated the applicable standard of review: "In reviewing a challenge to the sufficiency of the evidence supporting

4

the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. 'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.' (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] " '[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].' " [Citation.]' (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)" (See also *In re Angelia P.* (1981) 28 Cal.3d 908, 924.)

No evidence exists that father physically or sexually abused or neglected the boys themselves. But section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a "substantial risk" that the child will be abused or neglected. The legislatively declared purpose of these provisions "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*." (§ 300.2, italics added.) "The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the

5

statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Subdivision (j) of section 300 is the one that most closely describes the situation regarding the boys. Accordingly, we will focus on that subdivision.

Subdivision (j) applies if (1) the child's sibling has been abused or neglected as defined in specified other subdivisions and (2) there is a substantial risk that the child will be abused or neglected as defined in those subdivisions. (§ 300, subd. (j).) Here, father sexually abused the boys' sister as defined in subdivision (d). So the first requirement is met. At issue is the second requirement. "[S]ubdivision (j) was intended to expand the grounds for the exercise of jurisdiction as to children whose sibling has been abused or neglected as defined in section 300, subdivision (a), (b), (d), (e), or (i). Subdivision (j) *does not* state that its application is limited to the risk that the child will be abused or neglected *as defined in the same subdivision* that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) *or* (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling." (*In re Maria R.* (2010) 185 Cal.App.4th 48, 64 (*Maria R.*).)

Unlike the other subdivisions, subdivision (j) includes a list of factors for the court to consider: "The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).) "The 'nature of the abuse or neglect of the sibling' is only one of many factors that the court is to consider in

6

assessing whether the child is at risk of abuse or neglect in the family home. Subdivision (j) thus allows the court to take into consideration factors that might not be determinative if the court were adjudicating a petition filed directly under one of those subdivisions. [¶] The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance." (*Maria R.*, *supra*, 185 Cal.App.4th at p. 64.)

Several Court of Appeal cases have considered, in varying factual contexts, whether sexual abuse of a daughter supports finding a son to be a dependent of the court, with sharply conflicting results. (Compare *In re R.V.*, *supra*, 208 Cal.App.4th at pp. 842-848 [upholding finding the son was a court dependent when the son had witnessed some of the sexual abuse], *In re Ana C.* (2012) 204 Cal.App.4th 1317, 1330-1332 [upholding, over a dissent, finding the son was a court dependent], *In re Andy G.* (2010) 183 Cal.App.4th 1405, 1410-1415 [upholding finding the son was a court dependent when the father exposed himself to a daughter while the son was in the same room], *In re P.A.* (2006) 144 Cal.App.4th 1339, 1345-1347 [upholding finding the son was a court dependent], *In re Karen R.* (2001) 95 Cal.App.4th 84, 89-91 [upholding finding the sons were court dependents when the sons had observed some forms of physical abuse and heard their sister report a rape to their mother], and *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1213-1218 [upholding finding the son was a court dependent when there was also evidence the father had engaged in at least one homosexual relationship, shared a bedroom with the son, and showered with him at least twice]

with *In re Alexis S.* (2012) 205 Cal.App.4th 48, 53-56 [overturning finding the son was a court dependent], *Maria R., supra*, 185 Cal.App.4th at pp. 62-70 [overturning finding the sons were court dependents], and *In re Rubisela E.* (2000) 85 Cal.App.4th 177, 197-199 [overturning finding the sons were court dependents]; see also *In re Jordan R.* (2012) 205 Cal.App.4th 111, 137-139 [upholding the juvenile court's *refusal* to find the son was a court dependent].)

Some of these cases are distinguishable from this one and each other, in that some of the cases upholding the jurisdictional finding contained additional evidence that is lacking here. But to some extent, the cases simply disagree with each other. The majority below agreed with the cases finding the evidence sufficient, while the dissent agreed with the cases finding the evidence insufficient.

Two typical cases upholding the jurisdictional finding are *In re P.A.*, *supra*, 144 Cal.App.4th 1339, and *In re Karen R.*, *supra*, 95 Cal.App.4th 84. The *Karen R.* court said that "a father who has committed two incidents of forcible incestuous rape of his minor daughter reasonably can be said to be so sexually aberrant that both male and female siblings of the victim are at substantial risk of sexual abuse . . . . Although the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial. Given the facts of this case, the juvenile court reasonably could conclude every minor in the home, regardless of gender, was in substantial danger of sexual abuse by father." (*In re Karen R.*, *supra*, at pp. 90-91.)

In *P.A.*, the juvenile court sustained an allegation that the father had sexually abused his daughter by touching her vagina under her clothes and on top of her underwear. (*In re P.A., supra*, 144 Cal.App.4th at pp. 1341, 1343.) There was no evidence the father had inappropriately touched or otherwise sexually

8

abused his sons, and it appeared the boys were unaware of the abuse. (*Id.* at p. 1345.) Nevertheless, relying in part on *In re Karen R.*, *supra*, 95 Cal.App.4th 84, the court upheld the jurisdictional finding as to the sons. It acknowledged that the abuse in its case was "less shocking than the abuse in *Karen R.*," but it was "convinced that where, as here, a child has been sexually abused, any younger sibling who is approaching the age at which the child was abused, may be found to be at risk of sexual abuse. As we intimated in *Karen R.*, aberrant sexual behavior by a parent places the victim's siblings who remain in the home at risk of aberrant sexual behavior." (*In re P.A., supra*, at p. 1347.)

The *P.A.* court found its conclusion "consistent with section 355.1, subdivision (d), which provides in pertinent part that: '(d) Where the court finds that either a parent, a guardian, or any other person who resides with . . . a minor who is currently the subject of the petition filed under Section 300 . . . (3) has been found in a prior dependency hearing . . . to have committed an act of sexual abuse, . . . that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence.' [¶] Although section 355.1, subdivision (d), was not triggered here because there was no prior dependency proceeding at the time of the jurisdictional hearing, it nonetheless evinces a legislative determination that siblings of sexually abused children are at substantial risk of harm and are entitled to protection by the juvenile courts." (*In re P.A.*, *supra*, 144 Cal.App.4th at p. 1347.)

A relatively early case overturning the jurisdictional finding is *In re Rubisela E.*, *supra*, 85 Cal.App.4th 177. The *Rubisela E.* court did "not discount the real possibility that brothers of molested sisters can be molested [citation] or in other ways harmed by the fact of the molestation within the family. Brothers can

9

be harmed by the knowledge that a parent has so abused the trust of their sister. They can even be harmed by the denial of the perpetrator, the spouse's acquiescence in the denial, or their parents' efforts to embrace them in a web of denial." (*Id*. at p. 198.) But, the court found, "in the case at bench, while such a showing is possible, there has been no demonstration by the department that 'there is a substantial risk [to the brothers] that [they] will be abused or neglected, as defined in . . . [the applicable] subdivisions . . . .'" (*Id*. at p. 199.)

Relying partly on *In re Rubisela E., supra*, 85 Cal.App.4th 177, the *Maria R.* court "disagree[d] with prior cases to the extent that they have held, either explicitly or implicitly, that a parent's sexual abuse of a daughter, either alone or in combination with a factor or factors that have no established correlation with sexual abuse, is sufficient to establish that the parent's son is at risk of sexual abuse by that parent . . . ." (*Maria R.*, *supra*, 185 Cal.App.4th at p. 63.) It agreed with *Rubisela E.* "that the brothers of molested girls may be harmed by the fact of molestation occurring in the family," but it did not "agree with prior cases to the extent that they have held or implied that the risk that the brothers face may — in the absence of evidence demonstrating that the perpetrator of the abuse may have an interest in sexually abusing male children — be deemed to be one of 'sexual abuse' within the meaning of subdivision (d). . . . [T]he phrase 'sexual abuse' for purposes of section 300 is defined by reference to the offenses enumerated in Penal Code section 11165.1, whether the allegation of sexual abuse is filed under subdivision (d) or (j). [Citation.] Penal Code section 11165.1 refers to specific sex acts committed by the perpetrator on a victim . . . and *does not include* in its enumerated offenses the collateral damage on a child that might result from the family's or child's reaction to a sexual assault on the child's sibling." (*Maria R.*, *supra*, at pp. 67-68.)

10

The *Maria R.* court noted that "[n]one of the courts that have held or impliedly concluded that a child, regardless of gender, whose sibling was sexually abused, may be found to be at risk of *sexual abuse* under subdivision (d), either directly or under subdivision (j) [of section 300], has cited any scientific authority or empirical evidence to support the conclusion that a person who sexually abuses a female child is likely to sexually abuse a male child. [Citing *In re P.A.*, *supra*, 144 Cal.App.4th 1339, and *In re Andy G.*, *supra*, 183 Cal.App.4th 1405.] In the absence of evidence demonstrating that a perpetrator of sexual abuse of a female child is in fact likely to sexually abuse a male child, we are not persuaded that the rule of general applicability enunciated in *P.A.*, and repeated by the *Andy G.* court, is grounded in fact. For this reason, we decline to adopt the reasoning of *P.A.* and *Andy G.*" (*Maria R.*, *supra*, 185 Cal.App.4th at p. 68.) The court concluded that "[s]ince there is no evidence in the record that would tend to support a finding that [the father] has an interest in engaging in sexual activity with a male child, we cannot . . . conclude that [the father's] sexual abuse of his daughters — as aberrant as it is — establishes that [the son] is at substantial risk of *sexual abuse* within the meaning of subdivision (j), as defined in subdivision (d) and Penal Code section 11165.1." (*Ibid.*)[2]

We agree with the majority below that the evidence in this case was sufficient to support the juvenile court's dependency finding. Among the factors cited in subdivision (j) for the court to consider are the circumstances surrounding, and the nature of, father's sexual abuse of his daughter. By citing these factors,

[2]     However, the *Maria R.* court remanded the matter to the juvenile court for further proceedings to determine whether the son might be a dependent child under section 355.1, subdivision (d)(3). (*Maria R.*, *supra*, 185 Cal.App.4th at pp. 69-72.) In light of our resolution of this case, we need not, and do not, consider whether the *Maria R.* court erred in this respect.

11

subdivision (j) implies that the more egregious the abuse, the more appropriate for the juvenile court to assume jurisdiction over the siblings. (§ 300, subd. (j).) "Some risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great. . . . Conversely, a relatively high probability that a very minor harm will occur probably does not involve a 'substantial' risk. Thus, in order to determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm . . . ." (*People v. Hall* (Colo. 2000) 999 P.2d 207, 217-218 [considering what constitutes a "substantial and unjustifiable risk" of death].) In other words, the more severe the type of sibling abuse, the lower the required probability of the child's experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect under section 300. If the sibling abuse is relatively minor, the court might reasonably find insubstantial a risk the child will be similarly abused; but as the abuse becomes more serious, it becomes more necessary to protect the child from even a relatively low probability of that abuse.

The majority below accurately described father's behavior as "aberrant in the extreme: he sexually abused his own daughter 'by fondling the child's vagina and digitally penetrating the child's vagina and forcefully raped the child by placing the father's penis in the child's vagina.' " Also relevant to the totality of the circumstances surrounding the sibling abuse is the violation of trust shown by sexually abusing one child while the other children were living in the same home and could easily have learned of or even interrupted the abuse. "[S]exual or other serious physical abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. . . . When a parent abuses his or her child, . . . the parent also abandons and contravenes the parental role. Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody. (See

12

§ 300, subds. (d), (e), (j).)" (*In re Kieshia E.* (1993) 6 Cal.4th 68, 76-77.) The serious and prolonged nature of father's sexual abuse of his daughter under these circumstances supports the juvenile court's finding that the risk of abuse was substantial as to all the children.

The *Maria R.* court criticized cases like *In re P.A.*, *supra*, 144 Cal.App.4th 1339, for not citing scientific authority or empirical evidence to support the conclusion that a father who abuses his daughter is likely to abuse his son. (*Maria R.*, *supra*, 185 Cal.App.4th at p. 68.) But nothing in the statutes suggests a legislative intent to *require* a court to consult scientific authority or empirical evidence before it makes the "substantial risk" determination. The specific factors the Legislature stated in section 300, subdivision (j) do not include such evidence. Rather, after considering the nature and severity of the abuse and the other specified factors, the juvenile court is supposed to use its best judgment to determine whether or not the particular substantial risk exists. As the majority below noted, "It is of course impossible to say what any particular sexual predator — and here a predator who has raped his own daughter — is likely to do in the future in any particular instance. But in our view that very uncertainty makes it virtually incumbent upon the juvenile court to take jurisdiction over the siblings . . . ."

Another statute that does not directly apply here supports the conclusion that a court need not consult scientific authority before it finds the requisite substantial risk when a parent has sexually abused a sibling. Section 355.1, subdivision (d), provides that a prior finding of sexual abuse (of anyone, not just a sibling) is prima facie evidence that the child who is the subject of the dependency hearing is subject to the court's jurisdiction under section 300. When it enacted subdivision (d) of section 355.1, the Legislature found "that children of the State of California are placed at risk when permitted contact with a parent or caretaker

13

who has committed a sex crime. Further, the Legislature finds that children subject to juvenile court dependency jurisdiction based on allegations of molestation are in need of protection from those persons." (Stats. 1999, ch. 417, § 1, p. 2780.) Nothing in this subdivision suggests it is limited to sexual abuse of a person of the same gender as the child before the court.

Father correctly argues that section 355.1 does not apply here because there was no finding in a *prior* proceeding that he committed sexual abuse. But neither the *P.A.* court, nor the Court of Appeal here, nor the Department contends it does apply. Rather, section 355.1 is relevant because it evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding. (See *In re P.A.*, *supra*, 144 Cal.App.4th at p. 1347.)

Citing empirical studies, father argues that when a father sexually abuses a daughter, his sons are at significantly lower risk of sexual abuse than are his other daughters. Amicus curiae California State Association of Counties challenges father's statistics and argues that empirical studies show the risk to boys when a sister is abused is greater than father argues. We need not examine these studies in detail. For present purposes, we may assume that father's other daughter is at greater risk of sexual abuse than are his sons. But this does not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk. "Although the danger of sexual abuse of a female sibling in such a situation may be greater than the danger of sexual abuse of a male sibling, the danger of sexual abuse to the male sibling is nonetheless still substantial." (*In re Karen R.*, *supra*, 95 Cal.App.4th at p. 91.) The juvenile court need not compare relative risks to assume jurisdiction over all the children of a sexual abuser, especially when the abuse was as severe and prolonged as here.

The juvenile court's assumption of jurisdiction under section 300 does not itself mean father will lose all parental rights. "A dependency adjudication is a

14

preliminary step that allows the juvenile court, within specified limits, to assert supervision over the endangered child's care.  But it is merely a first step, and the system includes many subsequent safeguards to ensure that parental rights and authority will be restricted only to the extent necessary for the child's safety and welfare." (*In re Ethan C.* (2012) 54 Cal.4th 610, 617.)  All we are holding at this point is that when a father severely sexually abuses his own child, the court may assume jurisdiction over, and take steps to protect, the child's siblings.

We agree with the Court of Appeal's conclusion.  "The juvenile court is mandated to focus on 'ensur[ing] the safety, protection, and physical and emotional well-being of children who are at risk' of physical, sexual or emotional abuse.  (§ 300.2.)  That is what the court did here."  As we noted earlier, the juvenile court found, "by clear and convincing evidence, . . . that there is a substantial danger to the children, if returned to the home, to the physical health, safety, protection, physical, emotional well-being of the children, and there are no reasonable means by which the children's physical health can be protected without removing the children from the father's custody in this case."  In upholding the assertion of jurisdiction in this case, we are not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused.  We merely hold the evidence in this case supports the juvenile court's assertion of jurisdiction.  (Cf. *In re Jordan R.*, *supra*, 205 Cal.App.4th 111 [upholding the juvenile court's refusal to assert jurisdiction].)

### III. CONCLUSION

We affirm the judgment of the Court of Appeal and disapprove, to the extent they are inconsistent with this opinion, *In re Alexis S.*, *supra*, 205 Cal.App.4th 48, *In re Maria R.*, *supra*, 185 Cal.App.4th 48, and *In re Rubisela E.*, *supra*, 85 Cal.App.4th 177.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re I.J.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 207 Cal.App.4th 1351
**Rehearing Granted**

_____

**Opinion No.** S204622
**Date Filed:** May 9, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Timothy R. Saito

_____

**Counsel:**

Cristina Gabrielidis, under appointment by the Supreme Court, and Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Emery El Habiby, Deputy County Counsel, for Plaintiff and Respondent.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cristina Gabrielidis
6977 Navajo Road, Suite 303
San Diego, CA  92119
(619) 733-1328

Emery El Habiby
Deputy County Counsel
201 Centre Plaza Drive, Suite 1
Monterey Park, CA  91754-2142
(323) 526-6228