Filed 1/29/14  In re A.A. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | B248695 (Los Angeles County Super. Ct. No. CK98208) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  ROBERTO A.,  Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Marilyn Martinez, Temporary Judge.  (Pursuant to Cal. Const., art. VI, §21.)  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and William D. Thetford, Deputy County Counsel for Plaintiff and Respondent.

Appellant Roberto A. ("father") is the father of the male infant, A.A. After federal authorities found child pornography on father's computer, mother voluntarily submitted to the jurisdiction of the court. Father did not and appeals the court's jurisdictional findings made pursuant to Welfare and Institutions[1] Code section 300, subdivision (d). He contends there is insufficient evidence to support a finding that his son was at substantial risk of being sexually abused, as required by subdivision (d). We sustain the court's findings and orders.


FACTS

On March 6, 2013, federal authorities executed a search warrant at a duplex in Los Angeles because child pornography was being downloaded and viewed via the Internet at that location. Special Agent Neal Jetton contacted the Los Angeles County Department of Children and Family Services ("DCFS") to request a child welfare check of two-month old A.A., who lived at that location with his parents.

When DCFS social worker Raul Perez ("CSW Perez") arrived at the home, he learned that father had admitted downloading child pornography. Agent Jetton described the pornography as depicting minor females from six to fifteen years old engaged in sexual activity. Father usually viewed pre-teen girls. Agent Jetton also told CSW Perez that someone at the IP address was "actively sharing" child pornography.

CSW Perez interviewed father, who acknowledged watching child pornography, but initially claimed it was by "mistake" and only took place a few times. When CSW Perez informed him that his IP address had been monitored, father admitted that he started watching about a year ago, and then watched more because he was "curious." Father also admitted that he knew that child pornography was illegal.

Dependency Investigator Veronica Reyes interviewed father on March 13, 2013. Father admitted viewing and downloading child pornography for about a year. He was

_____

[1] All subsequent section references are to this code, unless otherwise indicated.

surprised the first time he downloaded the pornography. Thereafter, he used the term "PTHC" to search for the pornography, although he did not know what it meant. He subsequently learned from CSW Perez that it meant "pre-teen hard core." He downloaded 60 videos in all. Father always viewed the videos alone in his bedroom with the door closed. He initially intended to show the pornography to the police, but then decided not to. Father was not sure if watching child pornography was illegal, but he believed it to be immoral.

DISCUSSION

The court amended and then sustained the allegation that A.A. was a child described by section 300, subdivision (d) who was at risk of being abused. The sustained allegation read: "[Father] established a detrimental and endangering home environment for the child in that father downloaded and viewed frequently and for [a]1 year duration child pornography of pre-teen females, in the child's home. Such a detrimental and endangering home environment established for the child by the father endangers the child's physical health and safety and places the child at risk of physical harm, danger and sexual abuse."

Father contends that his action of watching child pornography alone in his bedroom does not constitute sexual abuse of his son and does not create a substantial risk that A.A. will be sexually abused by him. He further contends there is insufficient evidence to support the juvenile court's jurisdictional and dispositional findings and orders.

Section 300 provides in pertinent part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (d) The child has been sexually abused or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her household . . . ." DCFS has the burden of proving by a

3

preponderance of the evidence that a child is a dependent of the court under section 300. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

"In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

Here, the juvenile court stated: "It appears to the court that [father] was not able to stay away from viewing, from downloading, and perhaps from exchanging these pornographic videos of very young children. Because he was not able to control what he seemed to believe was wrong and ought to have been reported to the police is an important factor in the court finding that at some point, he may not be able to control himself to the extent that as his son grows older and more mobile, that his son may be exposed to the screens that he himself is viewing. [¶] There isn't any evidence that he has acted out inappropriately towards his son, but he was unable to control himself, [and] his urges to repeatedly watch videos."

There is substantial evidence to support this finding. Father admitted to downloading 60 child pornography videos over the period of one year. His statements show that he knew his acts were illegal and believed them to be immoral. Yet he did not stop until federal authorities seized his computers and did not seek help until DCFS came on the scene. Even then, father continued to minimize his actions. It is more than reasonable to infer that, absent intervention, father would continue to view child pornography and that his inability to control his viewing would eventually result in A.A. viewing the images. Exhibiting child pornography to a minor is a violation of Penal

4

Code section 311.2, subdivision (d), and is sexual abuse within the meaning of Penal Code section 11165.1, subdivision (c)(1). There is no requirement that the minor be old enough to understand the meaning of the pornography.

To the extent that father contends there could be no risk to A.A. until he becomes mobile, and so the court must wait until that occurs, he is mistaken. Father is engaging in conduct which if it continues creates a substantial risk that the child will be sexually abused. "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivisions at issue here require only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 773.)

The juvenile court also stated: "I find also by the preponderance of the evidence that he may not be able to use good judgment and preclude himself from inappropriately handling his child in a sexual manner. He acknowledges that he wants therapy to assist him with these urges. [¶] He says he's never been aroused. Perhaps it's matter of semantics what is aroused. Perhaps he never had penile erection, but there was something that kept him going back time and time and time again. He was unable to stop himself."

There is substantial evidence to support the trial court's finding. The differences between a child rapist and a child pornographer "are not as great as they might seem at first glance. The child pornographer, like the child rapist, displays a sexual interest in children. See 140 Cong. Rec. S12900 (daily ed. Sept. 20, 1994). . . ." (*U.S. v. Bentley*

5

(2007 N.D. Iowa) 475 F.Supp.2d 852, 858.)[2] "In addition to indicating a broader abnormal sexual attraction to children, child pornography shares a strong nexus with pedophilia. In the Child Pornography Prevention Act of 1996, Congress found that 'child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children.' Pub.L. No. 104–208, § 121, 110 Stat. 3009, *3009–26 (1996). This is wholly consistent with earlier findings that 'child pornography may induce viewers to commit sex crimes on children.' [(*U.S. v. Byrd* (5th Cir. 1994) 31 F.3d 1329)] at 1336 n. 9 (citing David B. Johnson, *Why the Possession of Computer–Generated Child Pornography Can Be Constitutionally Prohibited*, 4 Alb.L.J.Sci. & Tech. 311, 326 & n. 141 (1994) (citing 1 U.S. Dep't of Justice, Attorney General's Commission on Pornography: Final Report 649–50 (1986))." (*U.S. v. Brand* (2d Cir. 2006) 467 F.3d 179, 198.)

Thus, father's viewing of child pornography showed that he had a sexual interest in children, may have stimulated his sexual appetite and might induce him to commit sex crimes on children. Taken together with father's inability to control his urges to watch child pornography, this is substantial evidence that A.A. is at risk of being sexually abused by father.

Father contends there is no evidence that he viewed child pornography for sexual gratification. Father testified that he watched the pornography out of "curiosity." The juvenile court found this testimony incredible, as do we. Curiosity does not cause one to watch something 60 times. Further, one can infer sexual interest in children from watching child pornography. (See *People v. Memro* (1995) 11 Cal.4th 786, 865 [sexually explicit photographs of young boys were "evidence from which the jury could infer that [defendant] had a sexual attraction to young boys and intended to act on that attraction"];

---

[2] We note that under federal law, "producing, possessing or transporting pornographic photographs of children are, in themselves, forms of child sexual abuse. See, e.g., Adam Walsh Child Protection and Safety Act of 2006, Pub.L. 109–248, 120 Stat. 587, 624, at § 501(2)(D) (July 27, 2006) ('Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse.')." (*U.S. v. Bentley, supra,* 475 F.Supp.2d at p. 858, fn. omitted.)

6

see also *U.S. v. Brand, supra,* 467 F.3d at pp. 198-199 [possession of child pornography admissible to show intent to meet minor for sex].)

To the extent that father contends A.A. will not be at risk of sexual abuse until he is the age of the children in the pornography, and so jurisdiction now is unwarranted, we do not agree. Father's inability to control himself was a problem at the time the court took jurisdiction and continued until the dispositional hearing. There is nothing to suggest that, absent intervention, father would have been able to control himself until A.A. was six years old, or would want to.

Father contends that even if the jurisdictional findings were supported by a preponderance of the evidence, the court's findings at the dispositional hearing show that there was no clear and convincing evidence that A.A. was at risk of sexual abuse. Father concludes the court erred prejudicially in not dismissing the entire dependency petition.

The court stated: "I do order the matter be referred to family preservation, and the reasons are as follows: While I have just sustained a petition by a preponderance of the evidence, I cannot find by clear and convincing evidence today that [father] poses a risk to his child and without reiterating everything I've already stated, he has acknowledged his errors."

Jurisdictional findings must be made by a preponderance of the evidence, while an order at disposition removing a child from parental custody must be made by clear and convincing evidence. (§§ 355, 361, subd. (c); *In re Henry V.* (2004) 119 Cal.App.4th 522, 528-529.) The law specifically allows a juvenile court to sustain a dependency petition and declare a child a dependent, but allow the child to remain in parental custody and order family maintenance services. (§ 361, subd. (c); § 364; see, e.g., *In re Henry V., supra,* 119 Cal.App.4th at p. 525.) Thus, the trial court's finding that there was not clear and convincing evidence to support removing A.A. from the home did not require a dismissal of the petition.

Father's reliance on section 390 is misplaced. That section permits the court to dismiss a petition if the interests of justice and the welfare of the minor so require and if

7

the parent of the minor is not in need of treatment or rehabilitation. (§ 390.) Here, the court found that father was in need of treatment, specifically counseling, to deal with his viewing of child pornography. Although father had sought counseling on his own, he did not do so until DCFS became involved with his family. The juvenile court was justified in continuing supervision of father to ensure that he continue with counseling.

Father contends that six months of supervision would serve no purpose because A.A. would still be an infant. To the contrary, it would ensure that father attended counseling for six months. Father's successful completion of counseling would protect A.A. If father did not comply, the court could consider that factor at the six-month hearing.

ISPOSITION

We affirm the juvenile court's jurisdictional and dispositional findings and orders.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

TURNER, P. J.

KRIEGLER, J.

---

[*]Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8