Filed 6/6/24  In re L.A. CA2/4
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.A. et al.,<br><br>Persons Coming Under the Juvenile Court Law. | B329121<br>(Los Angeles County<br> Super. Ct. No. 20CCJP02658B-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.A. et al.,<br><br>    Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge. Affirmed.

Law Office of Robert McLaughlin and Robert McLaughlin, by appointment of the Court of Appeal, for Defendant and Appellant A.O.

Law Office of William Hook and William Hook, by appointment of the Court of Appeal, for Defendant and Appellant A.A.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

A.O. (mother), joined by A.A. (father), appeals from the juvenile court's findings and orders terminating parental rights over L.A., Sofia A., and M.A. pursuant to Welfare and Institutions Code sections 300 et seq.[1]  We conclude substantial evidence supports the juvenile court's finding that the parental-benefit exception to termination of parental rights does not apply.

## FACTUAL BACKGROUND

The Los Angeles Department of Children and Family Services (Department) filed a petition on May 14, 2020, alleging mother and father had a history of engaging in violent altercations in the presence of L.A., Sofia A., M.A., and S.A.[2]  S.A. is mother's daughter from another relationship.  The petition alleged that father violently abused mother, who failed to protect the children by allowing father to reside in the children's home and have unlimited access to them.  Mother had a history of substance abuse that rendered her incapable of providing regular care for the children.  The petition alleged father sexually abused S.A.  Mother failed to protect S.A. when she knew or reasonably should have known of the sexual abuse.

At the detention hearing on May 19, 2020, the juvenile court ordered the children to be detained, with S.A. to be released to her biological father,

_____

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

[2]     S.A. and her biological father, D.A., are not parties to this appeal.

D.A.  The court held a contested jurisdiction and disposition hearing in September 2020, at which it sustained the allegations that the children were at substantial risk of serious physical harm due to the parents' domestic violence (§ 300, subds. (b)(1)(A), (B); count b-1), mother's substance abuse (§ 300, subd. (b)(1)(D); count b-2), and mother's failure to protect S.A. from father's sexual abuse (§ 300, subds. (b)(1), (d), (j); counts b-3, d-1, j-1).

During the six-month review period, the children lived with caregivers R.M. and J.M.  In the Department's February 16, 2021, status report, mother stated she did not believe father sexually abused S.A.  The juvenile court held a six-month review hearing in March 2021.  The court found continued jurisdiction was necessary because both parents were only in partial compliance with the case plan.  The court noted it was problematic that father and mother still denied the sexual abuse allegations against father, especially when the court sustained the charges of sexual abuse.  The court concluded that returning the children to parents would be detrimental to them.  In October 2021, the court held a 12-month review hearing, finding that continued jurisdiction was necessary.  The court indicated mother complied with her case plan "in name but not [in] deed" as she continued to deny father sexually abused S.A.

In November 2021, S.A. disclosed to a Department social worker that mother attempted to persuade her to recant her sexual abuse allegations against father.  In February 2022, the juvenile court held an 18-month review hearing.  The court found continued jurisdiction was necessary because, despite mother and father attending their court-ordered programs, they still denied the domestic violence and sexual abuse allegations.  The court terminated reunification services and set a hearing for a permanent plan under section 366.26.  The court subsequently noted that the Department's

3

recommendation was for maternal aunt, V.T., to adopt the children. The court ordered the Department to interview the children, the current caregivers R.M. and J.M., and V.T. to learn what permanency plan would be in the children's best interest.

The children remained placed with caregivers R.M. and J.M. for the next few months. However, the caregivers reported they could not provide the children with permanency due to the children's increased needs. In June 2022, the Department placed the children with V.T. and her husband, J.T., who lived in Fresno County. V.T. expressed interest in providing the children with permanency and stability. In the Department's July 22, 2022, status report, the children stated that they preferred to live with their parents. The children continued to live with caregivers V.T. and J.T. from August 2022 to April 2023. The social worker reported during this period that the children appeared to have developed a trusting and loving relationship with the caregivers. In December 2022, the children reported they no longer wanted in-person visits with their parents, as the parents "minimally engage[d]" with and "often ignore[d]" them. The children informed the Department in early 2023 that they preferred to be adopted by their caregivers.

The juvenile court held the section 366.26 hearing on April 27, 2023. The parents requested the court apply the parental-benefit exception under section 366.26, subdivision (c)(1)(B)(i) and not to terminate parental rights. The court found the parents met the first element of the parental-benefit exception, as they regularly visited the children. However, the court concluded the parents did not meet the second element of the exception—they did not show the children would benefit from continuing the relationship. The court found the children's relationship with their parents had "broken down." The court acknowledged that, in contrast to recent reports, there

4

were earlier reports that showed the children were bonded with their parents. The court explained this discrepancy by indicating the children's time with their current caregivers allowed them to open up and comfortably share their feelings.

The juvenile court then determined the third element of the exception was not met because termination of parental rights would not be so detrimental as to outweigh the benefits gained through adoption. The court found the children adoptable and that no exception applied. The court terminated the parents' parental rights.

Mother timely appealed. Father joined mother's appeal shortly thereafter.

## DISCUSSION

A. *Substantial Evidence Supports the Trial Court's Findings on the Parental-Benefit Exception*

1. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.]'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

2. *Substantial Evidence Supports the Denial of the Parental-Benefit Exception*

Mother and father contend the juvenile court erred in denying the parental-benefit exception. We disagree.

The parental-benefit exception is codified in section 366.26, subdivision (c)(1)(B)(i). The section provides that the court shall terminate parental rights when it has denied reunification services, "unless . . . [¶] [t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." "[T]hree elements the parent must prove to establish the [parental-benefit] exception [are]: (1) regular *visitation and contact,* and (2) a *relationship,* the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*In re Caden C.* (2021) 11 Cal.5th 614, 631.)

"In each case [in which a court considers the parental-benefit exception], . . . the court acts in the child's best interest in a specific way: it decides whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' [Citation.] 'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights." (*In re Caden C., supra,* 11 Cal.5th at p. 633.)

The first element of the exception concerning visitation and contact is not in dispute here. Instead, the parents argue the juvenile court erred when it found they did not satisfy the second element. "[For] the second element, courts assess whether 'the child would benefit from continuing the

relationship.' (§ 366.26, subd. (c)(1)(B)(i).)" (*In re Caden C., supra,* 11 Cal.5th at p. 632.) "[T]he relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' [Citation.]" (*Ibid.*) "[C]ourts often consider how children feel about, interact with, look to, or talk about their parents." (*Ibid.*) A substantial evidence standard of review applies to the second element, which is "essentially a factual determination whether the relationship is such that the child would benefit from continuing it." (*Id.* at p. 640.)

The record contains substantial evidence demonstrating L.A., Sofia A., and M.A. would not benefit from continuing their relationship with parents. By the time of the section 366.26 hearing, the children were estranged from their parents. Each child expressed she no longer wanted to visit the parents and was ready to be adopted by her caregivers. M.A. reported the parents minimally engaged with the children and often ignored them. M.A. also disclosed that mother hit and kicked her. M.A. stated that mother would hit her if she told anyone of mother's violent acts against her.

Sofia A. reported the parents did not care for the children, stating "my dad hurt [S.A.]" and "my mom hurt me." Sofia A. disclosed that mother grabbed her by the throat and hit her. Sofia A. stated that mother also kicked and slapped her. Sofia A. was also resentful that mother gave L.A. preferential treatment.

L.A. reported she was aware of and saddened by father's alleged sexual abuse of S.A. L.A. stated that the sexual abuse allegations made her feel uncomfortable when father forced her to hug and kiss him and to respond when he told her he loved her. L.A. also expressed discomfort that mother

7

displayed preferential treatment towards her in front of her siblings. L.A. reported that the parents have failed her.

By early 2023, the children refused to attend in-person visits with the parents, despite the Department and their caregivers encouraging them to do so. Given the complete breakdown of their relationship, substantial evidence demonstrates the children had little or no bond with the parents when the section 366.26 hearing was held. Thus, substantial evidence supports the court's finding that mother did not satisfy the second element of the parental-benefit exception.

3. *The Parents' Remaining Arguments as to the Second Element of the Parental-Benefit Exception are Unpersuasive*

The parents contend the children spent the vast majority of their lives in mother's custody. The parents argue the children previously expressed a desire to return to mother's custody and that the Department failed to sufficiently investigate why the children turned against their parents.

However, the children had not lived with their parents since May 2020, nearly three years before the section 366.26 hearing in April 2023. During this time, the children developed a trusting and loving relationship with their caregivers and disclosed their misgivings about the parents. The children later refused to attend visits with their parents, despite the Department and the caregivers encouraging them to do so. Thus, the children no longer exhibited any positive emotional attachment to the parents.

The parents' argument as to the sufficiency of the Department's investigation also lacks merit because the parents have the burden of proof that the parental-benefit exception applies. (See *In re J.D.* (2021) 70 Cal.App.5th 833, 861 ["To be clear, it was not the agency's burden to disprove

the existence of the beneficial relationship exception—the burden of proof on this issue was squarely on mother"].)  The parents never objected to the sufficiency of the Department's reports at the section 366.26 hearing.  The evidence shows the caregivers engaged with the children and provided them a safe space to express their feelings.  Accordingly, the juvenile court could reasonably conclude the children's time with their caregivers allowed them to later willingly share their misgivings about the parents.

In addition, the parents maintain the juvenile court improperly compared mother's caregiving attributes with those of the children's maternal aunt, V.T.  While it is improper to "compar[e] the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s)" (see *In re Caden C.*, *supra*, 11 Cal.5th at p. 634), the court specifically considered each child's relationship to the parents at the section 366.26 hearing.  The court discussed each child's statements about the parents and the negative effects of their interaction.  The court indicated the children no longer wanted to visit their parents despite the caregivers encouraging them to do so.  Hence, the court did not inappropriately rely on comparisons between the parents' attributes as custodial caregivers relative to the potential adoptive parents.

The parents also assert the juvenile court placed excessive emphasis on V.T.'s visitation logs and did not sufficiently weigh evidence of mother's longstanding relationship with her daughters.  However, "issues of fact and credibility are the province of the trial court." (*In re I.J.*, *supra*, 56 Cal.4th at p. 773, internal quotation marks omitted.)  This court "do[es] not reweigh the evidence or exercise independent judgment, but merely determine[s] if there are sufficient facts to support the findings of the trial court." (*Ibid.*)  The record is reviewed "in the light most favorable to the [court's

9

determinations]." (*Ibid.*) Thus, the court did not err in its consideration of the exception when it weighed more heavily certain evidence, such as V.T.'s visitation logs, against the parents.

In reviewing the whole record, we conclude substantial evidence supports the juvenile court's findings that L.A., Sofia A., and M.A. lacked the substantial, positive emotional attachment to mother and father necessary to apply the parental-benefit exception. Because we find substantial evidence supports the court's finding that the parents did not satisfy the second element of the parental-benefit exception, we need not consider their arguments concerning the third element of the exception.

## DISPOSITION

The order terminating mother's and father's parental rights is affirmed.


ZUKIN, J.

We concur:


CURREY, P. J.


COLLINS, J.