Filed 9/19/25  In re A.V. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.V., Jr., et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>Y.S.,<br><br>        Defendant and Appellant. | G065213<br><br>(Super. Ct. Nos. 24DP1298, 24DP1299, 24DP1300, 24DP1301, 24DP1302)<br><br>O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Daphne Grace Sykes, Judge. Affirmed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Debbie Torrez, Supervising Deputy, and Chloe R. Maksoudian, Deputy County Counsel, for Plaintiff and Respondent.

Y.S. (Mother) challenges the juvenile court's jurisdictional findings under Welfare and Institutions Code[1] section 300. We affirm. The record contains substantial evidence that two of her children were inappropriately physically disciplined and that they and their siblings are at a substantial risk of serious physical harm.

FACTS

Given the limited issue on appeal, we provide only a brief summary of the proceedings in this case.

Mother and Father have five children together: a 15-year-old son, A.V., Jr.; an 11-year-old daughter; six-year-old twins, J.V. and Y.V.; and a one-year-old daughter. Mother and Father briefly separated some years back but then reunited.

Mother and Father have a history of engaging in domestic violence against one another, sometimes in the children's presence. In 2016, for example, A.V. (then age six) observed Mother and Father fighting with closed fists, and Mother later admitted she slapped Father while he was holding A.V.'s younger sister in his arms. In 2020, A.V. reported to police that Father and Mother threw glass at and struck one another during a fight, drawing blood. And in 2022, Mother reported that Father headbutted her during an argument about money, and Mother punched the back of Father's head; later that evening, Mother locked herself and the children in the bedroom and Father attempted to kick down the door.

Mother and Father also have a history of using excessive physical force to discipline their children. In 2019, for example, Mother slapped A.V. (then age 10) for fighting with his sister, leaving a large bruise on his

[1] All further statutory references are to this code.

cheekbone. In the ensuing investigation, Mother admitted to having slapped A.V. She also admitted she punched him on a previous occasion.

The family most recently came to the Orange County Social Services Agency's attention in October 2024 because J.V. (then age five) was observed to have a three-inch-long red mark between his eyebrows. J.V. initially said Father had hit him in the face with a sandal because he was not getting ready for school quickly enough. In the subsequent investigation, however, J.V. gave several inconsistent reports about how he got the mark— including that it was from a marker and that it was caused by various classmates.

That same day, J.V.'s twin sister, Y.V., confirmed she saw Father slapping J.V. with a sandal, though she remained silent when asked if she knew the difference between a truth and a lie. Y.V. also disclosed that Mother hit her on her legs and bottom before school because she had vomited in the living room. The social worker observed a small bruise on the girl's bottom. Mother confirmed she hit Y.V. because she threw up and admitted that she sometimes disciplines the children by hitting them on the mouth or the bottom with an open hand.

Father denied hitting J.V. or using a sandal to discipline the children. He was not cooperative during the investigation and told the children not to speak with the social worker. Police briefly detained him for being combative.

The Agency filed a section 300 petition based on Father striking J.V. in the face, Mother striking Y.V. on the legs and bottom, the parents' history of using inappropriate physical discipline, and their history of domestic violence, among other grounds. A protective custody warrant was granted, but the juvenile court released the children to the parents' custody.

In the following months, the parents continued to deny the physical abuse allegations and declined to provide information about their domestic violence history. The children likewise denied that their parents had ever used any physical discipline. Mother reported the entire family was traumatized and stressed by the Agency's involvement, and the children were afraid of being removed from their care.

At the jurisdictional hearing, after "look[ing] at the totality of the information or evidence presented," including "the age and maturity of the speakers, whether the statements are consistent with statements by others, [and] the motivation of the speakers to make the statements," the juvenile court found Father had hit J.V. in the face with the sandal and Mother had used physical force to discipline Y.V., resulting in bruising. The court also expressed concern that these are not "one-time incidents," but rather there was "a history of this exact behavior." Finding J.V., Y.V., and their siblings were at a substantial risk of future physical harm, the court sustained the petition (as amended).

At the subsequent disposition hearing, the juvenile court ordered that custody of the children remain vested with the parents. It then struck the substance abuse services and domestic violence services from the case plan and ordered the parents to participate in general counseling and parenting education.

DISCUSSION

A juvenile court may assert jurisdiction over a child when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm as a result of the parent's failure or inability to adequately protect the child. (§ 300, subd. (b)(1)(A).) The court may also assert jurisdiction when there is a substantial risk the child's siblings will be abused

4

in that manner. (*Id.*, subd. (j).) Jurisdictional findings are made by a preponderance of the evidence. (§ 355, subd. (a).)

"Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection. [Citations.] A parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) "'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*Ibid.*)

We review a juvenile court's jurisdictional findings for substantial evidence and will affirm if substantial evidence, contradicted or uncontradicted, supports those findings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) ""In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."" (*Ibid.*)

Mother claims the juvenile court's jurisdictional findings are not supported by substantial evidence. She insists that aside from a few photographs of the children's injuries, the only evidence supporting the allegations about J.V. and Y.V. is a single out-of-court statement by five-year-old Y.V. (who could not differentiate between the truth and a lie) that Father had slapped J.V. with a sandal and that Mother hit her with a sandal. Mother alternatively contends there is no evidence linking the marks on the

5

children to the parents, the sandals at issue appear physically incapable of causing their injuries, and in any event, there is no current risk of harm.

We conclude the juvenile court's findings are sufficiently supported. Before having an opportunity to speak with their parents, J.V. and Y.V. both disclosed that their parents had hit them with a sandal.[2] The marks left on their bodies were still visible hours later.[3] Mother admitted to using physical discipline on the children, and the parents have previously used physical discipline in an inappropriate manner on their older child, A.V. The parents also have a known history of engaging in domestic violence against one another, often in the presence of their children. Taken together, this constitutes substantial evidence that J.V. and Y.V. were inappropriately physically disciplined and that they and their siblings are at a substantial risk of serious physical harm.

---

[2] Mother insists J.V. "never disclosed that the red mark on his face was caused by Father hitting him with a sandal." But according to the Agency's detention report, when the reporting party questioned J.V. about the red mark on his face, J.V. disclosed that his "father had hit him in the face with a chancla sandal" earlier that morning "because [he] was not fast enough in getting ready for school."

[3] Mother contends no evidence showed the spanking was excessive. She does not develop this argument beyond briefly citing *In re D.M.* (2015) 242 Cal.App.4th 634 (*D.M.*), which rejected a "categorical view that 'hitting children with shoes' is 'physical abuse' and 'not a proper form of discipline . . . .'" (See *id.* at p. 637.) One can reasonably question the attempt to constrain dependency jurisdiction with general criminal and tort law principles. (*Id.* at p. 649 (dis. opn. of Chavez, J.).) In any event, the record would sufficiently support implied findings that slapping a five-year-old with a sandal to the point of leaving a mark because the child vomited or was slow to get ready for school was neither "genuinely disciplinary," "'warranted by the circumstances,'" nor "'reasonable.'" (See *id.* at p. 641 [three factors].)

We recognize the children later repeatedly denied any physical abuse. However, the juvenile court discredited those later denials, noting that "[a]n inconsistency does not necessarily mean that none of the statements can be believed." With J.V. in particular, the court believed "the child was attempting to move away from [his] original statement which incriminated his father, likely out of thinking that his parents were not going to like what he said." The court was entitled to give greater weight to the children's initial reports of abuse than to their subsequent denials. We decline Mother's invitation to reweigh the evidence and substitute our judgment for that of the juvenile court. (*In re E.G.* (2025) 112 Cal.App.5th 707, 722.)[4]

---

[4] Mother asserts the Agency's appellate brief is "riddled with inconsistencies, inaccuracies, and misleading assertions" and "blatantly misrepresents facts." This seems to be an overstatement. Viewing the facts differently is not a moral shortfall, and there is no need to assail opposing counsel's integrity.

## DISPOSITION

The jurisdictional findings are affirmed.


                                        SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.