Filed 7/11/14  In re Julian V. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JULIAN V., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA V.,<br><br>Defendant and Appellant. | F068232<br><br>(Super. Ct. No. 12CEJ300108)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Brian Arax, Judge.

David M. Meyers, under appointment by the Court of Appeal, for Defendant and Appellant.

Kevin Briggs, County Counsel, Janelle Kelley, Assistant County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Detjen, J. and Peña, J.

Joshua V. (father) appeals from the juvenile court's jurisdictional finding adjudging his 21-month-old son Julian a dependent child under Welfare and Institutions Code section 300, subdivision (j)[1] and its dispositional order denying him reunification services as to Julian under section 361.5, subdivisions (b)(6) and (c). Father contends there is insufficient evidence to uphold findings under section 300, subdivision (j) and section 361.5, subdivision (b)(6). He also contends the juvenile court abused its discretion in determining under section 361.5, subdivision (c) that it was not in Julian's best interest to offer him reunification services. We affirm.

### PROCEDURAL AND FACTUAL SUMMARY

Father has an extensive history of domestic violence and child abuse. In 2007, a police officer placed a protective hold on his then one-year-old son, J.J. (now adopted), who had extensive visible bruising. J.J.'s mother had been arrested for domestic violence and father had been granted sole custody. The juvenile court sustained an allegation under section 300, subdivision (a) that J.J. suffered serious non-accidental physical harm inflicted by father and denied father reunification services under section 361.5, subdivision (b)(6).[2] In May 2010, the juvenile court terminated father's parental rights.

In October 2011, father's sons, six-year-old Matthew, four-year-old Isaiah and 13-month-old Hector (the children) were taken into protective custody after the children's mother, Laura (mother), was arrested for domestic violence. The juvenile court exercised its dependency jurisdiction over the children and ordered mother and father to participate in parenting classes and random drug testing and to complete a domestic violence inventory, mental health assessment and substance abuse evaluation. The children were placed with their maternal grandmother.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Father appealed from the juvenile court's order denying him reunification services and we affirmed (F054307).

In August 2012, while father and mother were attempting to reunify with the children, mother gave birth to Julian and he remained in their care.

Though father and mother participated in services, they continued to engage in domestic violence in front of the children and the children exhibited its deleterious effects. Matthew was anxious after his visits with them and, after a five-day liberal visit, was distressed that he and his siblings were left with them for so long. Matthew's therapist believed Matthew was at risk for abuse from his parents if left with them unsupervised. In addition, Isaiah and Hector were exhibiting aggressive and self-injurious behavior.

In January 2013, after more than a year of providing reunification services, the department recommended the juvenile court terminate father and mother's reunification services. The department did not believe there was a substantial probability the children could be returned to their custody.

In April 2013, social worker Richard Valenzuela went to father and mother's home to check on the welfare of then seven-month-old Julian because mother tested positive for methamphetamine six days earlier. Valenzuela observed Julian to be appropriately dressed and clean. He appeared to be healthy and well nourished with no visible marks or bruises. Father and mother stated they were taking Julian to the doctor. Later that evening, Valenzuela returned accompanied by a police officer who placed a protective hold on Julian. Father denied knowing that mother tested positive for methamphetamine and said he was completely "done" with that relationship. Valenzuela took Julian into protective custody and the department placed him with his siblings in the home of his maternal grandmother.

The department filed a dependency petition on Julian's behalf, alleging in part that mother's methamphetamine use placed Julian at a substantial risk of harm, father knew about it and failed to protect Julian from it (§ 300, subd. (b); counts b-1 and b-2) and

father severely physically abused Julian's half-sibling, J.J., placing Julian at a substantial risk of similar harm (§ 300, subd. (j); count j-1).

The juvenile court ordered Julian detained pursuant to the petition and set the jurisdictional hearing for May 2013.

In late April 2013, the juvenile court terminated mother's reunification services as to the children, continued services for father, and ordered him to complete a psychological evaluation.

Prior to the jurisdictional hearing for Julian, the department filed a first amended petition as to Julian. As amended, it inserted a subdivision (j) allegation as to mother (count j-1), renumbered the count as to father "count j-2," and added facts pertaining to the children. It alleged:

> "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. [¶] … [¶]

> "Count (j-2): [Julian], is at substantial risk of suffering neglect by his [father] in that [father] severely physically abused Julian's half-sibling, [J.J.]. On May 4, 2007, [J.J.], was removed from his [father's] care and custody, due to [father] physically abusing [J.J.]. On November 19, 2011, [father] was denied Family Reunification Services pursuant to [section 361.5, subdivision (b)(6)]. On May 4, 2009, [father's] parental rights were terminated and a permanent plan of adoption was ordered. In addition, [father] neglected [Julian's] siblings, [Matthew, Isaiah and Hector]. On October 6, 2011, [Matthew, Hector and Isaiah] were removed from [father], due to domestic violence. Julian is at risk of similar neglect if returned to [father's] care."

On the date set for the jurisdictional hearing, the juvenile court set the matter for a contested hearing, which was ultimately conducted in August 2013.

Meanwhile, father was evaluated by psychologist Gary Sunday to determine whether the children could be safely returned to father's custody. Dr. Sunday opined that returning the children to father's custody would place them at significant risk of emotional, psychological and/or physical abuse or neglect. Dr. Sunday explained that

4

father suffered from some degree of untreated clinical depression and impulsive aggression, which given his history of substance abuse, domestic violence and child abuse, placed him "at [an] elevated risk for dysfunctional parenting and further potential for child abuse and domestic violence."

In August 2013, at the contested jurisdictional hearing, the juvenile court found insufficient evidence to support the b-2 count against father and dismissed it. The court found counts b-1 and j-1 true as to mother and count j-2 true as to father, and set the dispositional hearing for September 2013. The court also terminated father's reunification services as to the children and set a section 366.26 hearing in December 2013. Father did not challenge the setting order by writ petition.

In September 2013, the department submitted its report for the dispositional hearing and recommended the juvenile court deny mother reunification services under section 361.5, subdivision (b)(10) and (13) and father under subdivision (b)(6), (10) and (11).

In October 2013, the juvenile court conducted a contested dispositional hearing and counsel presented their cases by argument only. At the conclusion, the juvenile court found there was insufficient evidence to deny mother reunification services and ordered services for her. The court denied father reunification services under section 361.5, subdivision (b)(6) only, finding insufficient evidence to support denial under section 361.5, subdivision (b)(10) and (11).

This appeal ensued.

## DISCUSSION

I.    **Substantial evidence supports the juvenile court's finding that Julian is a minor child described in section 300, subdivision (j).**

The juvenile court may adjudge a child its dependent under section 300, subdivision (j) (subdivision (j)) if "[t]he child's sibling has been abused or neglected, as defined in subdivision (a) [serious physical harm], (b) [failure to protect], (d) [sexual

5

abuse], (e) [severe physical abuse], or (i) [cruelty], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).)

In this case, the juvenile court sustained allegations that father caused J.J. to suffer serious physical harm under section 300, subdivision (a) (subdivision (a)) and that he failed to protect the children under section 300, subdivision (b) (subdivision (b)) by engaging in domestic violence in their presence. Thus, as father concedes, the first prong of subdivision (j) is satisfied.

Father contends, however, that the evidence does not support the second prong of subdivision (j) because the juvenile court did not consider the totality of Julian's circumstances in finding that Julian was at a substantial risk of being abused or neglected as defined in subdivisions (a) and (b). By "totality of the circumstances," father refers to the factors the juvenile court is required to consider under subdivision (j): "the circumstances surrounding the abuse or neglect of the sibling, … the mental condition of the parent …, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

What father is really arguing is that the juvenile court did not give sufficient weight to evidence which father claims shows that Julian was safe in his care. As an example, father points to Valenzuela's observation that Julian was healthy and receiving proper care while in his custody. In framing his argument this way, father is in effect asking this court to reweigh the evidence. However, we do not reweigh the evidence or exercise independent judgment. Rather, we review the record to determine whether substantial evidence supports the juvenile court's findings and orders. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) In this case, we conclude that it does.

The juvenile court had before it evidence that mother and father continued to engage in domestic violence, the harmful effect of which was manifest in the children's anxiety surrounding visitation and self-injurious behavior. Thus, substantial evidence supports a finding that Julian was at substantial risk of being abused or neglected as

6

defined in subdivision (b). Further, the juvenile court had evidence that Julian was at a substantial risk of suffering serious physical harm under subdivision (a); namely Dr. Sunday's opinion that a child in father's care was at risk of being physically abused.

Father refutes the validity of Dr. Sunday's opinion by pointing out that Dr. Sunday could not interpret the results of the Child Abuse Potential Inventory (CAP Inventory), a test designed to measure a person's potential for physical child abuse.[3] However, father's attorney did not challenge the reliability of Dr. Sunday's opinion at the hearing. Thus, it was admitted into evidence without objection. Further, the CAP Inventory was just one in a series of tests Dr. Sunday used to assess father's risk for child abuse and neglect. Therefore, Dr. Sunday's inability to interpret the CAP Inventory did not prevent him from rendering an opinion as to the risk father posed to his children.

We conclude substantial evidence supports the juvenile court's subdivision (j) finding as to father given father's ongoing domestic violence and Dr. Sunday's opinion that the children would be at risk of neglect and/or child abuse if placed in his care.

**II.     Substantial evidence supports the juvenile court's denial of reunification services under section 361.5, subdivision (b)(6).**

Under section 361.5, subdivision (b)(6) (subdivision (b)(6)), the juvenile court "need not" provide reunification services if "the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of … the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent ..., as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent." Subdivision (b)(6) defines severe physical harm as "deliberate and serious injury inflicted to or on a child's body or the body of a sibling or half sibling of the child by an act or omission of the parent."

---

**3**      Dr. Sunday explained in his report that father's "fake good" responses prevented him from interpreting the results of the test.

7

Section 361.5, subdivision (k) requires the juvenile court to make a record of its factual findings. It states: "The court shall read into the record the basis for a finding of … the infliction of severe physical harm under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent … would not benefit the child."

Father contends the juvenile court's order denying him reunification services under subdivision (b)(6) must be reversed because the court failed to make the required findings. Reversal is required, he argues, because it is impermissible for the appellate court to infer the findings. Even if this court were permitted to infer the findings, he further argues, substantial evidence does not support them.

We disagree that reversal is mandated[4] and we may indeed infer required findings if they are supported by substantial evidence (*In re Corienna* (1989) 213 Cal.App.3d 73, 83) and in this case, they are.

Father contends the juvenile court did not specify, and therefore it is not clear, which of Julian's siblings was severely physically harmed such that Julian was adjudged a dependent pursuant to subdivision (j) and thus described in subdivision (b)(6). In our view, there can be no confusion. J.J. was the only child physically abused in this case. All references to "severe physical abuse" are to him.

---

[4]    Father cites *In re Kenneth M*. (2004) 123 Cal.App.4th 16 (*Kenneth M*.), in which the appellate court held that the juvenile court erroneously denied appellant reunification services under section 361.5, subdivision (b)(6) in part because section 361.5, subdivision (i) required certain factual findings not made by the juvenile court. (*Kenneth M., supra,* at p. 21.) As case authority, the *Kenneth M*. court cited our case, *In re Rebekah R*. (1994) 27 Cal.App.4th 1638, 1651-1652 (*Rebekah R*.). However, we clarified in *In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 that "*Rebekah R*. does not stand … for the proposition … [that] the failure to make findings necessary for a denial of services under section 361.5, subdivision (b)(6) mandates reversal." "We did not hold that absent explicit findings we could not uphold a denial under section 361.5, subdivision (b)(6). Indeed, in the next portion of our opinion, we reiterated the pertinent rule of appellate review, that is, we will infer a necessary finding provided the implicit finding is supported by substantial evidence." (*Ibid.*)

Father further contends the juvenile court did not specify the factual findings on which it determined that reunification services would not benefit Julian. Section 361.5, subdivision (i) provides the juvenile court guidance in making that determination. It requires the court to consider any relevant information, including: the act comprising the severe physical harm inflicted on the child's half sibling, the circumstances under which the harm was inflicted, the severity of emotional trauma suffered by the child's half sibling, any history of abuse of other children by the offending parent, the likelihood that the child may be safely returned to the care of the offending parent and whether the child desires to be reunified with the offending parent. (§ 361.5, subd. (i).)

Father is correct insofar as the juvenile court did not set forth a factual basis for its determination that reunification services would not benefit Julian. However, the department addressed the pertinent factors in its dispositional report. J.J. was 16 months old when he was physically abused and removed from father's custody. J.J. had extensive visible bruising in various stages of healing. He had a purple bruise on his right outer thigh, brown bruises on his left inner and outer thigh, brown bruising on both shoulders, bruising on both sides of his face and bruising on his bottom, which appeared to be consistent with having been spanked. Father had no reasonable explanation for J.J.'s injuries and, at the time of the abuse, had a substance abuse problem. He disclosed during a substance abuse assessment that he had been smoking marijuana and drinking alcohol for the previous seven years.

We conclude substantial evidence supports the findings required under subdivision (b)(6) to deny father reunification services as to Julian.

### III. The juvenile court did not abuse its discretion in denying father reunification services under section 361.5, subdivision (c).

When the juvenile court finds that a parent is described under section 361.5, subdivision (b)(6), it is prohibited from ordering reunification services for that parent unless it finds by clear and convincing evidence that reunification is in the best interest of the dependent child. (§ 361.5, subd. (c).) The parent bears the burden of showing that

9

reunification services would serve the child's best interest. (See *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65.)

Father contends he met his burden of showing best interest by demonstrating that he safely parented Julian while he was in his care, completed the domestic violence program and demonstrated he had changed. He contends he posed no risk of harm to Julian and argues the only reason Julian was removed from him was mother's drug use.

On appeal, we review the denial of reunification services under section 361.5, subdivision (c) for an abuse of discretion. "As a reviewing court, we will reverse a juvenile court's order denying services only if that discretion has been clearly abused." (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 523-524.) We find no abuse of discretion.

The juvenile court determined reunification was not in Julian's best interest because father has a history of severe physical child abuse, engaged in ongoing domestic violence and was deemed by a professional to present a risk of harm to his children. In making its determination, the court considered the fact that J.J.'s abuse occurred six years before but rejected father's argument that he did not pose a current risk of harm to Julian. The court also considered the fact that father completed the domestic violence program but concluded he failed to benefit from it.

On those facts, we find no abuse of discretion in the juvenile court's decision to deny father reunification services.

### DISPOSITION

The judgment is affirmed.