Filed 7/2/15  In re Jonathan H. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JONATHAN H., a Person Coming Under the Juvenile Court Law. | B257482 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>MONIQUE A.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK90482) |

        APPEAL from order of the Superior Court of Los Angeles County,

Marguerite Downing, Judge.  Affirmed.

        Marsha F. Levine, under appointment by the Court of Appeal, for Defendant and

Appellant.

        Amir Pichvai for Plaintiff and Respondent.

INTRODUCTION

Monique A. appeals from the order of the juvenile court taking jurisdiction over her 15-year-old son, Jonathan.  (Welf. & Inst. Code, § 300, subd. (b).)**1**  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *family history*

This is the second appeal involving a dependency in this family.  In the first dependency commenced in 2011, the juvenile court adjudicated then 12-year-old Jonathan a dependent because mother has mental and emotional problems and failed to take her prescribed medication, and because she was arrested for assault with a deadly weapon after driving onto a lawn to run a relative over with her car, intending to kill the victim.  Mother then brandished a pair of scissors and a gun at the relative.  Jonathan was present the time.  The court issued an order in January 2012 permanently restraining mother from contacting Jonathan because mother had failed to undergo a court-ordered psychiatric evaluation (Evid. Code, § 730), failed to enroll in services, and was negatively influencing Jonathan during unmonitored telephone contact.  The court granted Jonathan's father John N., who was not living with mother, sole legal and physical custody of the child and terminated jurisdiction.  We affirmed the orders. (*In re J.H*. (Sept. 20, 2012, B239461) [nonpub. opn.].)  There have been seven other referrals involving mother and Jonathan between 2001 and 2013 that did not result in a dependency.

In February 2014, two years later, the Department of Children and Family Services (the Department) filed the petition at issue here on behalf of Jonathan under subdivision (b) of section 300.  As sustained, the petition alleges with respect to father that he was unwilling and unable to provide ongoing care and supervision of Jonathan and requested the child be removed from his home and custody.  As for mother, the petition alleges that she has a history of mental and emotional problems which render her

---

**1**     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

incapable of providing regular care and supervision of Jonathan. On a prior occasion, mother was hospitalized for evaluation and treatment of her psychiatric condition. Jonathan has been a dependent of the court because of mother's mental and emotional problems.

2. *the detention report*

In the events leading to this newest petition, the Department received a referral on the child abuse hotline in February 2014, alleging father and step-mother, Trina H., physically abused Jonathan by hitting and stomping on him. Jonathan ran away from father's home and went to mother despite the restraining order.

Trina H. told the interviewing social worker that Jonathan ran away from home because he refused to follow house rules. He took Trina's cell phone on which she kept precious photographs of her deceased son. When Jonathan was originally placed with father, two and a half years earlier at the age of 13, he could not read or write well. He was placed in special education. Father stated that the child lies and steals. Father felt it was better for Jonathan to live with mother.

Jonathan admitted running away from father's house. He went to his maternal aunt, his mother, and then to his friend Elijah P. Jonathan no longer wanted to live with father who was " 'too strict.' " Jonathan admitted taking his step-mother's telephone.

Elijah P.'s mother explained that when Jonathan ran away from father and came to her, she took him to mother because she was unaware of the prior dependency and the restraining order.

The social worker interviewed mother by telephone. Interviewing mother "was extremely complicated, as mother appeared to be mentally unstable." Mother's conversation went from calm, to extreme, to aggressive, to passive, to spiritual, and eventually to apologetic. Mother claimed " 'everyone is against her' " and that "her family framed her." Mother informed the social worker that she had someone listening in on the interview. However, mother admitted that Jonathan was living with her sister. Reminded that a permanent restraining order precluded mother from having contact with the child, mother raised her voice at the social worker. With respect to the incident

3

leading to mother's arrest, she indicated that " 'they lied,' " and that she was the one being attacked.

Mother wanted Jonathan in her care. She claimed she loved him and stated she had made several attempts to see him in the two years since the last dependency. She claimed she could be an active parent, even with the restraining order in place. Mother agreed that Jonathan could be placed with maternal aunt, Lakenya B.

L.B. notified the social worker that on the same day as the above interview with mother, L.B. had called the police to have mother removed from the car because of mother's behavior.

Based on the above information, the social worker concluded that Jonathan could not stay in father's home as father was reluctant to have the child remain with him and Jonathan did not want to return there. Nor could the child go to mother as she had failed to comply with previous court orders or to reunify with the child, and the existing restraining order prohibited mother from having unmonitored contact with the child.

The juvenile court ordered Jonathan detained.

3. *the jurisdiction report*

Through unmonitored telephone contact with Jonathan, mother was negatively influencing the child. As evidence, the social worker noted the child had became defiant just as he had before the first dependency. Father inappropriately disciplined the child by striking him with a belt. Jonathan ran away and was found with mother. As the result of the child's defiant behavior, father no longer wanted him to return to father's household and Jonathan did not want to return there because of father's strict rules. Jonathan wanted to live with mother.

Additionally, Jonathan continued to have unmonitored contact with mother and was engaging in reckless and unsafe behavior. He was acting out in school and in his placement. He was suspended from school for playing with his cell phone. He ran away from his caregiver, who had prohibited him from attending a party, and did not return for two days. He was suspected of drinking. Jonathan also posted a picture of the social worker's car on Instagram with threatening language. Were it not for the flash on the

child's camera, the license plate would have been visible. He was also involved in a theft of cell phones at Target.

Jonathan's caregiver expressed the same concern about the child's hygiene as had Trina: The child lacked proper hygiene; did not do his chores; did not clean after himself; and kept a dirty room.

The social worker was unable to interview mother because mother did not return telephone calls. Father denied he or his wife hit, stomped on, or physically abused Jonathan. Father was adamant that Jonathan not return to his custody, however, and wanted the child to go to a "training facility where he can get some training structure first."

Mother finally agreed to an interview. She made an appointment at her work, supposedly DHL. However, the address she gave was El Camino College. Mother was not there at the appointed time. She claimed that she had left work early and was waiting for the social worker at an intersection. The address did not exist. Mother gave the social worker another address, which also did not exist. Mother rejected the social worker's suggestion they meet at the Department's office and explained she did not know when she might be available to make a postponed interview. Mother suggested the social worker conduct the interview from his car. When the social worker declined, mother "became upset and accused [the social worker] of not wanting to interview her."

The interview finally took place the following day. Mother denied having a mental health problem or a history with the Department. Mother denied the allegations of the petition, stating that "people are lying and jealous" of her. She insisted she would undergo the psychiatric evaluation to prove "that I am mentally stable." She has yet to do so.

At the originally scheduled jurisdiction hearing, father did not contest the petition. The juvenile court sustained the allegations in count (b) of the petition involving father's conduct and declared Jonathan a dependent of the court. The court ordered the child removed from father's custody. (§ 361, subd. (c).)

5

As for mother, the juvenile court received the above described reports into evidence. Mother submitted reports indicating she had completed five sessions of a 12-week anger management program; attended four sessions of a 12-week parenting program; enrolled in a domestic violence program, and attended the orientation session to begin individual counseling. Also, she attended two intake sessions at a community health center. Mother did not provide evidence that she had undergone or had scheduled an Evidence Code section 730 psychological evaluation. At the hearing, Jonathan's attorney expressed concerns about mother's "serious[,] ongoing[,] unaddressed mental health issues."

The Department argued that mother had never addressed the mental health issues that caused the prior dependency. The Department also noted incidents in which mother's behavior *in court* "appeared erratic." For example, the juvenile court had had to admonish mother not to interrupt, and mother was agitated.

The juvenile court sustained the allegations explaining, although mother may not have obtained a specific diagnosis, that her behavior before the court was "erratic" and "unusual," as was her behavior with the social worker who was attempting to obtain information from her. Although mother's last hospitalization was in 2007, the court found it was clear that mother still had either "mental health or emotional issues" that affected her ability to properly parent with the result it was in Jonathan's best interest to sustain the petition with respect to her. The court ordered that Jonathan remain suitably placed and that visits with mother would remain monitored in a therapeutic setting in light of the existing restraining order. The court also ordered mother to undergo an evaluation under Evidence Code section 730 and to participate in various programs. Mother filed her appeal.

CONTENTIONS

Jonathan has already been declared a dependent based on father's conduct, and father has not filed an appeal. However, mother challenges the findings as to her, contending that there is no evidence to support the petition's allegations and that the juvenile court should have considered placing Jonathan in her custody.

6

DISCUSSION

1. *The evidence supports the juvenile court's jurisdictional findings and order*.

A child who falls within the following description is within the jurisdiction of the juvenile court and may be adjudged a dependent child of the court under section 300, subdivision (b)(1): "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." Under section 300, subdivision (b) there must be evidence indicating either that the child has already suffered, or there is a substantial risk he will suffer, serious harm or illness.

The juvenile court's finding at a jurisdictional hearing that a child is described by section 300 must be supported by a preponderance of the evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

The evidence here is sufficient. Mother was hospitalized in 2007 for two weeks for mental health issues. She was still suffering from mental health issues when she drove, with 12-year-old Jonathan in the car, onto a lawn with the intention of running over her relative, and then waived a pair of scissors and threatened to kill the victim. She was arrested and placed in a psychiatric jail unit. The juvenile court then issued an order *permanently* restraining mother from contact with Jonathan outside of a therapeutic setting. That order remains in effect. None of this behavior, which lead to the previous dependency, has ever been addressed. Then, in advance of the jurisdiction hearing in this case, mother's own sister had to call the police simply to have mother removed from the sister's car. Mother has acted erratically and delusionally with the social worker and even in court. Mother never underwent the psychological evaluation the juvenile court ordered under Evidence Code section 730. Mother's conduct, in sum, evinces the impaired judgment and distorted perception of reality, originally seen in 2011, that remains unaddressed in 2014 at the time of the jurisdiction hearing.

The evidence likewise supports the conclusion that mother's conduct causes harm to Jonathan and, as the conduct has not been addressed, continues to pose a risk to him. The child has been engaging in many reckless and self-destructive behaviors. Since he

7

resumed unmonitored contact with mother he has run away, stolen cell phones, consumed alcohol, and threatened a social worker. Even the *permanent* restraining order, issued in 2012 to protect Jonathan from mother, has not prevented mother from having unsupervised contact with him. Not only has mother repeatedly violated that order by contacting Jonathan and arranging for him to run away from father's house, but she claims she can parent the child even with the order in place, indicating mother intends to continue to flout the restraining order. The evidence supports the juvenile court's jurisdictional findings that mother's mental and emotional problems caused Jonathan's defiant, criminal, self-destructive behavior and that the child is at substantial risk in the future if mother is allowed unmonitored contact with him. (§ 300, subd. (b).) None of the cases mother cites persuades us otherwise.

Mother quotes from Black's Law Dictionary's definition of mental illness and argues that we must interpret section 300, subdivision (b) to "require some sort of diagnosis of a mental disorder, by a current or past licensed professional" before a court can make a subdivision (b) finding. This contention is convenient given mother has repeatedly avoided undergoing the very same Evidence Code section 730 psychological evaluation to obtain the diagnosis that she now insists must occur before the court can declare her child a dependent under section 300, subdivision (b). In any event, the juvenile court did not sustain allegations that mother has a "*mental illness*." Rather, the petition alleges that she has a history of mental and emotional problems that cause her to be incapable of providing regular care and supervision of Jonathan. Apart from whether mother has a diagnosed mental illness, her mental health and emotional problems place Jonathan at substantial risk of suffering serious physical harm.

2. *Mother's placement contention is moot.*

Mother next contends that the juvenile court failed to follow section 361.2 to place Jonathan with her. We have taken judicial notice of the order entered on April 27, 2015 returning Jonathan to mother's custody. Accordingly, this contention is moot.

8

DISPOSITION

The orders are affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.



We concur:



EDMON, P. J.



KITCHING, J.