Filed 1/12/16  In re K.H. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.H. et al., Persons Coming Under the Juvenile Court Law. | B262773 (Los Angeles County Super. Ct. No. CK95295) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.W.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

In this dependency proceeding, mother A.W. challenges the juvenile court's jurisdictional and dispositional orders. We affirm.

## FACTS AND PROCEDURE

Mother has three children. Twins K.H. an K.J. were born in 2010, and L.C. was born in 2012.[1] Our record contains only limited evidence concerning the children's medical conditions, which was the subject of another dependency proceeding. A social worker reported that K.J. has a speech problem. There also were reports that mother had been advised K.J. and K.H. had eye conditions and needed special treatment. Apparently mother also had been advised that K.J. needed occupational therapy to learn how to swallow to avoid choking. But at the time those reports were made, mother was *not* found to have neglected the children. Other documents showed that medical care for K.J., including eye examinations and evaluations, were approved. Additionally, there was evidence the twins received numerous vaccines.

In October 2012, a Welfare and Institutions Code[2] section 300 petition with the following allegations was sustained: Mother disciplined the children inappropriately by slapping them and throwing them in their cribs. Mother has an unresolved history of substance abuse rendering her unable to provide care for the children. Mother failed to take the children to necessary medical and therapeutic appointments. (The specific medical appointments were not identified in the allegations, and the reports supporting those allegations were not included in our record.)

In December 2013, the following supplemental allegations were sustained: Mother has an unresolved history of substance abuse, including marijuana, and currently abuses amphetamine and methamphetamine. Mother failed to participate in her court ordered substance abuse training and failed to submit to random drug testing. Mother failed to provide the twins with necessary medical care. Mother failed to take the children to their

---

[1]    Neither L.C.'s father nor the twins' father is a party to this appeal.

[2]    All statutory citations are to the Welfare and Institutions Code.

medical appointments for ophthalmology, occupational therapy, and audiology. She also failed to obtain Regional Center services.

On June 10, 2014, jurisdiction was terminated. Mother was advised to attend to all of the children's medical and educational needs, including enrolling them in a Head Start program. Mother also was advised to keep her home clean.

The current dependency petition was filed on December 3, 2014. As later sustained, the petition alleged under section 300, subdivisions (b) and (j)[3] the following: Mother failed to take the twins to medical examinations and failed to ensure their school (Head Start) attendance. Mother's home was filthy, unsanitary, and smelled of urine. The children were dirty and wore soiled clothing. The children were prior dependents as a result of mother's medical neglect.

In December 2014, the Los Angeles County Department of Children and Family Services (DCFS) reported that the twins were in foster care and L.C. was living with her father. The twins had been dismissed from their school because of poor attendance. Their teacher reported that the twins were behind academically and should have been attending school. When the twins were interviewed, they were dirty and wore dirty clothing but

---

[3] Section 300, subdivision (b)(1) provides in pertinent part that dependency jurisdiction is appropriate when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

Section 300, subdivision (j) provides jurisdiction is appropriate when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

appeared happy. Their home was "excessively dirty," and the twins' bedroom smelled of urine. Mother acknowledged that there was no food and explained that her governmental assistance had been terminated. Mother reported that she was in the process of receiving emergency food stamps so that she could purchase food.

L.C.'s father reported that mother did not consistently feed the children and did not keep their home clean. The twins' teacher reported that they missed excessive amounts of school, and when they attended, they were dirty and smelled.

In a subsequent report filed March 9, 2015, DCFS indicated that mother had cleaned her home and obtained a marijuana card. Mother reported that she was receiving services from the Cambodian Association. Mother's December, January, and February drug tests were positive for marijuana, and she failed to appear at one drug test.

At the jurisdictional hearing, mother testified that she enrolled in a drug rehabilitation program and individual counseling. Mother testified that she had not used marijuana for one month. Mother testified she did not know what services the twins needed. She testified that she thinks they missed appointments "with [the] Regional Center" but did not know what services they needed there.

The court assumed dependency jurisdiction. Mother was given reunification services. Mother was ordered to complete a 12-step program and submit to random or on-demand drug tests. If she had any missed test or any positive test, she was required to complete a full drug rehabilitation program with weekly random testing. Mother was ordered to attend parenting education classes and individual counseling.

The court later terminated jurisdiction over L.C. only, maintaining jurisdiction over the twins. It awarded L.C.'s father sole physical custody of her.

## DISCUSSION

On appeal, mother argues no substantial evidence supported the jurisdictional findings, and the dispositional orders were improper because the children were not at risk in mother's custody. We disagree.

4

## 1. *Jurisdiction*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]."'"'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Jurisdiction under section 300, subdivision (b) requires a substantial risk that the child will suffer serious physical harm or illness. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 139-140.)

Strong evidence supported the juvenile court's jurisdictional order. Mother had a prior dependency proceeding involving the same issues raised in the current proceeding. Although jurisdiction was terminated in the prior proceeding, the record showed mother had not learned to care for her children. She generally failed to take them to school and to their medical appointments. She failed to bathe them. She dressed them in dirty clothing. And she failed to provide adequate food for them. The prior sustained allegations showed that the children had medical appointments in ophthalmology, occupational therapy, and audiology. By the time of the jurisdictional hearing, mother still did not know what appointments the children were required to attend. The record also supported the inference that mother had failed to resolve her longstanding substance abuse problem. Mother's conduct placed the children at substantial risk of harm because they did not receive the care they needed and lived in unsanitary conditions.

## *2. Disposition*

""""The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion."""" (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) "Additionally, '[t]he juvenile court may direct any and all reasonable orders to the parents or guardians of the child who is the subject of any [dependency] proceedings . . . as the court deems necessary and proper to carry out this section,' including orders 'to participate in a counseling or education program.' (§ 362, subd. (d).) The case plan ordered by the court should be appropriate for each individual family based on facts relevant to that family, and should be designed to eliminate the conditions that led to the dependency in the first instance." (*Ibid*.)

Mother's argument that the disposition was incorrect largely depends on her claim that jurisdiction was inappropriate because the children were not at risk of harm, a claim which we have rejected. As explained above, ample evidence supported the finding that the children were at substantial risk of harm in mother's custody. Given these circumstances, the juvenile court did not abuse its discretion in ordering them removed from mother's care at disposition. The court's remaining orders were directly related to assisting mother in the issues that led to the dependency proceedings and fell well within the court's broad discretion. Mother's testimony that she started a rehabilitation program shortly before the jurisdictional hearing does not show that she was rehabilitated and no evidence in the record so indicated. In short, mother fails to demonstrate the juvenile court abused its discretion in fashioning its dispositional order.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.                    GRIMES, J.

6