Filed 9/21/20  In re J.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | B304560 (Los Angeles County Super. Ct. No. 19CCJP06747D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  N.A.,  Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.  INTRODUCTION

N.A. (mother) appeals from the juvenile court's order taking jurisdiction over J.M. (Child D) pursuant to Welfare and Institutions Code[1] section 300, subdivisions (a) and (b)(1). Mother contends that there was insufficient evidence to support the finding that she used inappropriate physical discipline on Child D such that Child D was at substantial risk of serious physical harm.  We affirm.

## II.  BACKGROUND

A.  *Referral*

Child D, who was five years old at the time of the jurisdictional hearing, is the youngest of mother's four children. The juvenile court designated the siblings as Child A (born in 2003), Child B (born in 2007), and Child C (born in 2011).

On August 22, 2019, the Los Angeles County Department of Children and Family Services (Department) received a referral alleging emotional abuse of the four children.  The reporting

---

[1]     Further statutory references are to the Welfare and Institutions Code.

2

party stated that Child D had hit another student in class, and when asked why he had done so, the child reported that he thought the other student was going to hit him. Child D then disclosed to the reporting party that mother and father disciplined him by hitting him on the leg with an open hand and spanking him on the buttocks with a belt.

On August 28, 2019, a social worker met separately with Child D and Child C at their school. Child C reported that Child D "'gets in trouble every night. It gets very loud [and] mom gets a hanger or belt and hits him.'" Child D reported that he was disciplined with a "'spanking,'" which Child D explained meant he was struck with a belt and sandal. The social worker also met with the school psychiatrist, who reported that Child D had difficulties adjusting to school and exhibited aggressive, defiant, and startle response behavior.

The social worker then met individually with Child A and Child B. Child B reported that when he and his siblings were in trouble, they "'just get warnings, nothing really.'" Child A reported that he is usually disciplined by having his cell phone taken away but if he continues to misbehave, "sometimes [mother] throws her chancla," referring to a sandal.

B. *Dependency Petition/Detention Hearing*

On October 17, 2019, the Department filed a dependency petition pursuant to section 300, subdivisions (a) and (b)(1). The Department alleged, as eventually amended and sustained by the court, that:

3

"a-2 [and b-2]

"[Child D]'s mother . . . inappropriately physically disciplined the child . . . .  Such inappropriate physical discipline was excessive and caused the child unreasonable pain and suffering, endangering the child's physical health and safety, creating a detrimental home environment, and placing the child at risk of serious physical harm, damage, danger, and physical abuse."

On October 21, 2019, the juvenile court found a prima facie case that Child D was a minor described under section 300 and released the child to the parents' home.

C.    *Jurisdiction/Disposition Report*

On November 13, 2019, a Department investigator interviewed all four children, separately, in the parents' home. Child D had no visible marks or bruises indicative of abuse. Child D stated that his parents did not hit him; they disciplined him by making him sit in the corner for 10 minutes.  Later in the interview, Child D stated:  "'My [m]om hit me on my knee with a belt and a sandal in the old house and I cried.  It was just one time and it left a mark on my knee.'"  The child also added, pointing to a red mark on his elbow, that the parents hit him with a hanger on the arm and left a mark.

Child C stated that mother did not physically discipline the children and denied that the parents ever hit the children with a belt, hanger, or shoe.

Child A and Child B also denied physical abuse.

The investigator interviewed mother, who denied physically disciplining the children, stating, "'There is no physical

4

discipline.'" When asked why the children would report physical abuse, she initially opined that they may have been coerced into making the statement and then added, "'They might get a smack on the hand, we are very touchy feely but being angry and abusive and hitting them, no.'" Mother described Child C and Child D as having "'vivid imagination[s].'" Father likewise stated that he did not know why the children reported that mother had physically disciplined them.

The investigator opined that the "available documents" did not provide "solid evidence such as documented marks or bruises consistent with physical harm in support of the allegation of physical abuse."

D. *Jurisdiction/Disposition Hearing*

On January 2, 2020, the juvenile court held the jurisdiction and disposition hearing. Following argument by the parties, the juvenile court sustained counts a-2 and b-2. As for disposition, the court ordered supervision by the Department and services for the family pursuant to section 360, subdivision (b). Mother timely appealed.

## III. DISCUSSION

Mother challenges the juvenile court's jurisdictional findings. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the

5

petition is supported by substantial evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We focus our analysis on count a-2.

Section 300, subdivision (a) provides for jurisdiction where: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. . . . For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury."

Contrary to mother's contention, there was substantial evidence that mother struck Child D on the buttocks, leg, and elbow with a belt and sandal. Child D reported being hit with a belt and sandal. Further, Child C corroborated his brother's report, explaining that Child D got in trouble every night and was struck by mother with a hanger or belt. Even Child A, who generally denied abuse, reported that mother sometimes threw her sandal as a form of discipline. On this record, substantial evidence supported the juvenile court's conclusion that mother's physical discipline was excessive and "placed the child at risk of serious physical harm."

We are unpersuaded by mother's argument that the jurisdictional findings must be vacated because Child D did not suffer serious physical harm. "'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J., supra*, 56 Cal.4th at p. 773.) "[A] court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate

6

the child is at risk of serious physical harm." (§ 300, subd. (a).) Here, the evidence supported an inference that mother had, on multiple occasions, used objects to strike Child D's buttocks, knee, and elbow. Further, Child D reported that mother's abuse left marks on at least two occasions, once on the knee and once on the elbow.

We also reject mother's contention that her use of physical discipline against Child D fell within the scope of the parental right to discipline. "Whether a parent's use of discipline on a particular occasion falls within (or instead exceeds) the scope of th[e] parental right to discipline turns on three considerations: (1) whether the parent's conduct is genuinely disciplinary; (2) whether the punishment is 'necess[ary]' (that is, whether the discipline was 'warranted by the circumstances'); and (3) 'whether the amount of punishment was reasonable or excessive.'" (*In re D.M.* (2015) 242 Cal.App.4th 634, 641.) Mother consistently denied that she used physical discipline against Child D, admitting only that the children "might get a smack on the hand." As we describe above, there was ample evidence that mother's use of physical force on Child D exceeded a "smack on the hand." Moreover, there was no evidence that mother's use of a sandal and belt were for "genuine discipline," because, according to mother, no such striking ever occurred. Thus, there was substantial evidence that the parental discipline exception did not apply. (Cf. *ibid.* [finding mother's use of sandal on child's buttocks as form of discipline was not categorically a "serious physical harm" under § 300].)

## IV.  DISPOSITION

The jurisdictional findings are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


We concur:


RUBIN, P. J.


MOOR, J.