Filed 11/23/21  In re John A. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JOHN A., Jr., a Person Coming Under the Juvenile Court Law. | B311096 (Los Angeles County Super. Ct. No. 19CCJP02142C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JOHN A., Sr., Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore. Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant John A., Sr., (father) appeals from the juvenile court's jurisdictional findings and dispositional orders regarding his son John A., Jr., (minor, born 2019).  Father contends that his incarceration precludes any risk of harm to minor and, therefore, substantial evidence does not support the court's finding of jurisdiction.

We affirm.

## BACKGROUND

I. *The Family*

Father and W.C. (mother) are minor's parents.[1]  Mother is not a party to this appeal.  Mother has two older children, K.H. (born 2014) and S.H. (born 2017) (collectively half-siblings).  Father is not the father of half-siblings.

II. *Referral; Initial Investigation; Removal*

A few days after minor's birth in October 2019, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging general neglect of minor.

_____

[1]     On December 8, 2020, the juvenile court found father to be minor's biological father.

Mother had an open dependency matter regarding half-siblings. Mother had missed two drug tests.

During an interview with a DCFS social worker, mother said that marijuana and methamphetamine were her drugs of choice but that she had been sober for six months. Mother reported having a good relationship with father and described him as "a 'good guy.'" Father had been arrested for having guns and selling drugs in the home while half-siblings were present. He would not be released from custody until 2027 and, due to her own felony conviction, mother could not visit him.

In November 2019, DCFS decided to initiate removal proceedings for minor given that mother was receiving family reunification services for minor's "older, less vulnerable siblings," mother had not completed court-ordered services, and mother left a treatment program in violation of a court order.

The juvenile court issued a removal order in December 2019, and minor was taken into protective custody.

III. *Dependency Petition*

On December 19, 2019, DCFS filed a dependency petition seeking the juvenile court's exercise of jurisdiction over minor pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling).[2]

Counts b-1 and j-1 alleged that mother's history of substance abuse and recent abuse of methamphetamine rendered her incapable of providing regular care of minor. Half-siblings were juvenile dependents due to mother's substance abuse. Mother had left a court-ordered substance abuse treatment program.

---

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Counts b-2 and j-2 alleged that mother and father created a dangerous and detrimental home environment for half-siblings. Despite her knowledge that father abused methamphetamine and sold drugs in half-siblings' home, mother allowed father to reside in the home and have unlimited access to half-siblings. Father had a drug-related criminal conviction and, on April 2, 2019, he "was arrested for child cruelty possible injury/death," possession of a controlled substance while armed, and lewd and lascivious acts with a child under 14.

Finally, counts b-3 and j-3 alleged that mother and father created a dangerous and detrimental home environment for half-siblings, as law enforcement had "found several large baggies containing methamphetamine, a digital scale, a box of plastic baggies, ammunition, a pistol and two loaded magazines" in half-siblings' home and within half-siblings' access.

IV. *Detention Hearing*

At the detention hearing on December 20, 2019, the juvenile court found that a prima facie showing had been made that minor was a person described by section 300. Minor was detained from father and released to mother under DCFS supervision. The court ordered monitored visitation for father upon his release from custody.

V. *Jurisdiction/Disposition Report*

According to the jurisdiction/disposition report filed in February 2020, mother reported being sober for almost 10 months and stated that drugs and alcohol were no longer a part of her lifestyle. As for the count b-3 and j-3 allegations regarding drugs, drug paraphernalia, a gun, and ammunition, mother admitted that "'[it] was true at the moment'" but that they all belonged to father. She stated, "'The only fault I had was

4

letting my kids be around it.'" Mother had been aware that father was a drug dealer before she began a relationship with him.

When asked about father's registered sex offender status, mother stated that father told her that his ex-girlfriend's underage daughter had gotten on top of him while he was asleep and proceeded to have sex with him. While father was reportedly "asleep/passed out, he 'released inside of the girl and she got pregnant.'" Mother was not sure what to believe.

Father was incarcerated in state prison and had not had any visits with minor.

VI. *Adjudication Hearing*

The adjudication hearing was held on March 3, 2021. Father's presence at the hearing was waived. The juvenile court sustained count j-2 only, as amended to conform to proof and eliminating the allegations against mother. All other counts were dismissed.

As amended, the sustained j-2 count states: ". . . Father . . . established an endangering and detrimental home environment for . . . half-siblings . . . in that . . . father has a history of methamphetamine use and sold illicit drugs in . . . half-sibling[s'] home. On [April 2, 2019], . . . father was arrested for child cruelty possible injury/death, possessed controlled substance while armed for an outstanding warrant due to lewd or lascivious acts with child under 14. [*Sic.*] Law enforcement officers found several large baggies of methamphetamine, a digital scale, a box of plastic baggies, ammunition, a pistol and two loaded magazines in . . . [half-]siblings' home and within access to . . . half[-]siblings. Such a detrimental and endangering home environment established for . . . [half-]siblings by . . . father

endangers . . . [minor's] physical health and safety and places . . . [minor] at risk of serious physical harm."

Minor was declared a dependent of the court. He was removed from father and placed with mother under DCFS supervision. Father was granted monitored telephonic or video visits with minor twice monthly while father remained incarcerated. Based on father's status as a biological father and his 2027 release date, the juvenile court did not order services for father. Mother's court-ordered case plan included a full drug and alcohol program with aftercare, drug testing, a 12-step program, parenting classes, and individual counseling.

This timely appeal ensued.

## DISCUSSION

Father contends that the evidence was insufficient to support the juvenile court's jurisdictional findings under section 300, subdivision (j).[3]

I. *Standard of Review*

We review jurisdictional findings for substantial evidence. (*In re Mia Z.* (2016) 246 Cal.App.4th 883, 891.) "Under this test, we resolve all conflicts in the evidence, and indulge all reasonable inferences that may be derived from the evidence, in favor of the court's findings." (*Ibid.*) "Substantial evidence may include inferences, so long as any such inferences are based on logic and reason and rest on the evidence." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 318 (*Madison S.*).)

II. *Relevant Law*

Under section 300, subdivision (j), the juvenile court has jurisdiction over and may adjudge to be a dependent of the court

---

[3] Father does not independently challenge the dispositional order removing minor from his custody.

6

a child whose "sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions." In determining whether to exercise jurisdiction under subdivision (j), the court is required to "consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (§ 300, subd. (j).)

"[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. The subdivision[] at issue here require[s] only a 'substantial risk' that the child will be abused or neglected. . . . [Citation.] 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

The existence of a substantial risk is a function of the likelihood of a particular harm and the magnitude of that harm. Thus, "'[s]ome risks may be substantial even if they carry a low degree of probability because the magnitude of the harm is potentially great. . . . [¶] . . . [¶] . . . Conversely, a relatively high probability that a very minor harm will occur probably does not involve a "substantial" risk. . . .'" (*I.J.*, *supra*, 56 Cal.4th at p. 778.)

III. *Analysis*

Father does not challenge the juvenile court's findings regarding his drug use, sale of drugs in half-siblings' home, or maintenance of drugs, a firearm, and ammunition within access

7

of half-siblings in their home.  Rather, he argues that the court erred by finding that minor was at substantial risk of being abused or neglected, as required to support jurisdiction under section 300, subdivision (j), because father was incarcerated and would be until 2027—another six years from the time of the adjudication hearing.

We disagree.  The juvenile court could reasonably find that father's incarceration did not remove the substantial risk that father posed to minor.  (See *In re Carlos T.* (2009) 174 Cal.App.4th 795, 806 [the incarceration of a father, who had been convicted but not yet sentenced and still had the right to appeal his convictions, did not eliminate the substantial risk that his children would be abused].)  Even accepting father's representation that the window for bringing a direct appeal of his conviction has lapsed, a logical and reasonable inference exists that father could still be released at any time through various avenues of postconviction relief or retroactive legislative changes.

The evidence supports this inference.  A printout of an online California Department of Corrections and Rehabilitation (CDCR) inmate information form dated December 19, 2019, indicates that father's "Parole Eligible Date" is January 2027.  The form provides the following explanation:  "The Parole Eligible Date displayed above is subject to change.  [¶]  The date shown above is the earliest possible release date for this inmate at this time.  This is the earliest date the inmate is expected to be released, based on current information.  Inmates may earn credits for participating in rehabilitative programming, which may move their parole eligible dates to an earlier date.  Inmates could also be found guilty of an institutional rules violation, which could result in a loss of credits that may move their parole

8

eligible dates further into the future. Parole eligible dates may also change based on a variety of other reasons, including court orders, changes in law, and routine audits. Parole eligible dates displayed on this website are updated regularly."

Further indicating that the "Parole Eligible Date" is subject to change, a CDCR inmate information form dated September 9, 2020, also appears in the record and lists father's "Parole Eligible Date" as October 2026.

Father argues that "[t]he notion that [his] parole eligible date may be advanced by some unknown number of months is purely speculative, and no basis for assuming jurisdiction." But, here, the inference is more than speculation or conjecture. It is "based on logic and reason and rest[s] on the evidence." (*Madison S.*, *supra*, 15 Cal.App.5th at p. 318.) Accordingly, it constitutes substantial evidence supporting the jurisdictional findings. (See *ibid.*)

Finally, even if the probability of father's early release is low, the magnitude of the potential harm to minor if such an event materializes without protections in place is great. Father sold drugs in half-siblings' home and allowed them access to drugs, a firearm, and ammunition. Nothing in the record suggests that father would not expose minor to the same hazards. Under these circumstances, the juvenile court could reasonably conclude that the risk of abuse to minor was substantial. (See *I.J.*, *supra*, 56 Cal.4th at p. 778; *In re S.R.* (2020) 48 Cal.App.5th 204, 207 [""'even . . . a low degree of probability'" can give rise to a substantial risk if "'the magnitude of the harm is potentially great[]''"'"].)

9

## DISPOSITION

The jurisdictional findings and dispositional orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ