Filed 8/18/25  In re C.C. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re C.C., a Person Coming Under the Juvenile Court Law. | B341290 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 24CCJP01500A) |
| Plaintiff, | |
| v. | |
| C.B., | |
| Defendant; | |
| Co.C., | |
| Defendant and Respondent; | |
| C.C., a Minor, etc., | |
| Appellant. | |

APPEAL from order of the Superior Court of the County of Los Angeles, D. Brett Bianco, Judge. Affirmed.

Lelah S. Forrey-Baker, under appointment by the Court of Appeal, for Appellant.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Respondent.

_____

## OPINION[1]

C.C. (born June 2010) appeals from the juvenile court's dismissal of a dependency petition following a contested jurisdictional hearing. She argues that the dismissal order was not supported by substantial evidence and that the evidence compelled a true finding on the allegations of sexual abuse against her father, Co.C. (father). (§ 300, subd. (d).) We affirm.

## BACKGROUND

### A. Referral, Investigation, and Dependency Petition

In 2023, the Los Angeles County Department of Children and Family Services (DCFS) received reports that C.C. had been sexually abused by her father, but it closed the referrals as inconclusive. In February 2024, a caller reported that C.C. had brandished a knife at several students and was found in possession of a pornographic book, an empty bottle of an alcoholic

_____

[1]    We do not recite the entire factual and procedural background, as the parties are familiar with the facts of the case and its history. (Cal. Stds. Jud. Admin., § 8.1; *People v. Garcia* (2002) 97 Cal.App.4th 847, 851.) Undesignated statutory references are to the Welfare and Institutions Code.

beverage, and a lighter.  The caller stated that C.C. was sexually abused by her father and was exhibiting sexualized behaviors.

C.C., then a seventh grader, was found living with her mother, C.B. (mother), in a motel room.  C.C. told the social worker that father sexually abused her when she was in the fourth grade and living with him in Huntsville, Alabama.  According to C.C., father gave her lingerie, posted nude videos of her on the internet, forced her to watch pornography, and forced her to masturbate while he watched.  He also struck her with his hands, bruising her face and legs, and strangled her.  In a subsequent interview, C.C. added that father slammed her head against the wall, and on multiple occasions, ordered her to undress and assume a "push-up stance or doggy stance," whereupon he struck her with a belt.  C.C. said she had not seen father since around the time of her fifth grade graduation.

Mother said that she moved with C.C. to California in June 2022 to escape domestic violence and father's sexual abuse of C.C.  She stated that father put C.C. "'on pornography,'" had C.C. "'play[] with herself,'" and "'[p]ut[] her outside butt naked,'" and that father was incarcerated for "'child pornography, kidnapping, and sex trafficking.'"  Mother reported that C.C. had also been sexually abused by a teenaged cousin when she was six years old.  She told the social worker she had no concern about C.C.'s acquiring a pornographic book, and she falsely stated that C.C. met weekly with a therapist at school.

DCFS made inquiries of the child protective agencies of the Alabama counties where the parents resided when the alleged abuse occurred.  The agencies had no record of referrals or cases alleging father's sexual abuse of C.C.  However, a dependency petition alleging mother's neglect was filed in Lawrence County

3

in November 2020, and in October 5, 2022, an order in the case awarded legal and physical custody of C.C. to father.

DCFS's reports attached online news articles that described an October 2022 arrest of father for rape as well as other online records reporting his detention in Morgan County following a July 2023 arrest for possession of child pornography.

In May 2024, DCFS filed a petition pursuant to section 300, subdivisions (a), (b), and (d). Relevant to this appeal, the petition alleged that father sexually abused C.C. by forcing her to watch pornography and masturbate, by buying her lingerie, and by placing pornographic videos of her on the internet. The petition also alleged that mother failed to obtain mental health services for C.C. to address the sexual abuse, but DCFS recommended that C.C. remain in mother's home. C.C. began weekly therapy sessions shortly thereafter, and in its jurisdiction and disposition report, DCFS reported that it had no immediate concerns for C.C.'s safety in mother's care.

Father entered a denial plea. He told the social worker that C.C.'s allegations were untrue and that he had been arrested twice before because C.C. had made false allegations against him.

## B. Jurisdiction Hearing and Dismissal of Petition

A contested jurisdiction hearing was held in September 2024. Father, who was still in custody in Alabama, testified remotely.

Father denied the allegations of sexual abuse. He testified that C.C. came to live with him in 2020 because mother was unable to provide proper shelter or ensure she attended school. C.C. told him she had been sexually abused by a cousin in her prior home. He described having concerns over C.C.'s behavior,

4

for example, her accessing pornographic websites from her phone and circumventing security features on her school-issued tablet to access such websites. Under his supervision, C.C. received mental health services and counseling through her school.

Father testified about his current incarceration: he was arrested following law enforcement's finding child pornography on a computer that was shared by members of his household, who included his then-girlfriend, M., and her teenaged son. He testified that no such materials were found on his phone or his personal or work laptops, and a grand jury had not yet been convened in his case. He also described the 2022 arrest for alleged rape: M. was the accuser, the charges were dismissed, and M. lived with him for another year thereafter.

In announcing its ruling, the juvenile court noted that "only [C.C.] and [father] know for certain whether the abuse took place or not," and jurisdiction "really boils down to a credibility determination." Though C.C.'s statements about the abuse had been "relatively consistent" throughout the proceedings, the juvenile court found that "much of what she says is undermined by some other factors that call into question her credibility."

Father, the juvenile court found, was a "good witness," who "testified to things that if you look for support behind what he's saying, it can be found." The court acknowledged the arrests appeared to be "quite damning information," but father's testimony persuaded the court to see them in "a completely different dimension." The court found that "credibility determinations between [C.C.] and [father] tend to come down in favor of [father]." The court found the petition's allegations were "very possible," but it "just can't say that it's more likely than

not." It dismissed the petition over the objections of DCFS, mother, and C.C.

C.C. appeals, arguing that the evidence compelled a finding of jurisdiction based on the sexual abuse allegations and that the dismissal order was not supported by substantial evidence. She does not challenge the ruling on the physical abuse and allegations against mother. Father filed a respondent's brief urging us to affirm the juvenile court's ruling. He argues that substantial evidence supports the juvenile court's orders and mother can seek appropriate custody orders from the family court. DCFS did not file a brief.

## DISCUSSION

At the jurisdiction hearing, DCFS had the burden of proving by a preponderance of the evidence that C.C. was a person described by section 300. (§ 355, subd. (a); *In re I.J.* (2013) 56 Cal.4th 766, 773.) The focus of this appeal is section 300, subdivision (d), which applies to a child who has been sexually abused by a parent. The juvenile court held that DCFS did not meet its burden of showing C.C. was described by subdivision (d), and thus, the question on appeal is whether the evidence compels a finding in favor of C.C. as a matter of law. (*In re J.M.* (2023) 89 Cal.App.5th 95, 111.) We examine whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Ibid.*)

DCFS's evidence of sexual abuse was not uncontradicted, as father gave testimony denying the allegations. It was also not

unimpeached, as the juvenile court found reasons to question C.C.'s credibility.[2]

To corroborate that sexual abuse had occurred, DCFS relied on two brief online articles and a sheriff's booking profile that reported father's arrest in July 2023. A DCFS report indicates that it obtained these documents by doing a Google search, as it did not connect with correctional officials familiar with the case. DCFS did not provide any corroborating or updated witness testimony at the hearing.[3] Given these issues and the credibility assessments the juvenile court made at the hearing, there was room for the court to find the evidence insufficient to support the petition's allegations.

C.C. contends that father's testimony was inherently improbable, that he gave false testimony about C.C.'s custody history and his arrests, and that the juvenile court should have drawn different inferences from the limited information

---

[2] The court did not recite these reasons on the record, but we must presume it made all factual findings necessary to support the judgment for which substantial evidence exists in the record. (See *LSREF2 Clover Property 4, LLC v. Festival Retail Fund 1, LP* (2016) 3 Cal.App.5th 1067, 1076.) DCFS's reports described instances where C.C. made statements that were contradicted by others. For example, she told a social worker that she had not missed any days from school—a statement that was contradicted by a school administrator who reported that C.C. had just returned from a three-day suspension.

[3] Absent from DCFS's reports are statements from persons who interacted with father and C.C. around the time of the alleged abuse. For example, C.C. told a social worker that her paternal grandmother sometimes cared for her while she lived with father. DCFS's reports mention other relatives in Alabama, at least one of whom was contacted for ICWA purposes. There is no indication that investigators tried to contact them about the sexual abuse allegations.

presented about his arrests.  These arguments are an invitation to second-guess the juvenile court's credibility findings and reweigh the evidence.  This we cannot do, regardless of whether we may have believed other evidence or would have reached a different conclusion.  (*In re L.B.* (2023) 88 Cal.App.5th 402, 411–412.)

In sum, the evidence does not compel a finding as a matter of law that at the time of the jurisdiction hearing C.C. was a person described by section 300, subdivision (d).

### DISPOSITION

The juvenile court's September 4, 2024 order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

ZUKIN, P. J.

COLLINS, J.