Filed 3/5/26  In re K.C. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | B344830 (Los Angeles County Super. Ct. No. 24CCJP03930A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. A.C., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Sarah Vesecky, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

A.C. (father) appeals from the juvenile court's February 11, 2025, jurisdictional order declaring his daughter, K.C. (the child, born 2019), a dependent of the court under Welfare and Institutions Code section 300[1] and ordering her removed from father's custody and released to the home of mother. Father argues the court should have dismissed the section 300 petition because there was no substantial evidence that the child was at substantial risk of serious physical harm. We affirm.

## II. BACKGROUND

### A. *2019 Voluntary Family Maintenance*

On March 29, 2019, when the child was four weeks old, the Los Angeles County Sheriff's Department (Sheriff) responded to a call for service regarding domestic violence at the family home. According to the Sheriff's report, father was drunk when he picked up the child and his car keys and began to leave the home.

_____

[1] All statutory references are to the Welfare and Institutions Code.

2

When mother tried to stop him from leaving with the child, father pushed mother down on the bed, pulled her hair, pushed her against a dresser, and slapped her face. Mother's then 12-year-old son, M.M., witnessed the incident and ran out of the house for help.

The Sheriff's deputies who responded to the scene observed father "swaying back and forth, he had watery blood shot eyes, slurred speech and smelled of alcohol." Father admitted that he pushed mother when she tried to stop him from leaving with the child and that he had hit and pushed mother in prior unreported incidents. The deputies arrested father.

In response to the incident, the family entered into an agreement with the Department to participate in voluntary family maintenance services, which included father receiving treatment for alcohol abuse and attending therapy between April 15, 2019, and June 28, 2019. The family then relocated to Illinois for a period of time before returning to California around 2022.

B.    *Detention Report*

On November 21, 2024, the Department responded to a new five-day referral involving the family. On December 13, 2024, the juvenile court authorized the Department to remove the child from father.

On December 17, 2024, the Department filed a detention and addendum report and its initial section 300 petition alleging that the child was at risk of harm due to the parents' domestic violence and father's alcohol abuse. The Department reported that mother did not deny the allegations in the petition and said

"she did not want father in the home, but she [was] unable to make him leave, as his name [was] on the lease" and he refused to leave. She also confirmed that she and father argued almost daily but stated there had been only three physical altercations in the child's presence.

Mother, father, M.M., and the child similarly described an incident that occurred in the kitchen on October 12, 2024. Mother and father were arguing—father described it as a "shouting match"—when father grabbed mother by the arms and she slapped him when he would not release her. Father sustained a scratch on his face. Mother spent the night in jail. Following mother's arrest, the child was left in M.M.'s care because father was intoxicated.

The child reported feeling unsafe around father because he screamed at her and had hit her in the past. She stated that mother and father often fought and it scared her. The child stated that she had been injured when intervening in fights between mother and father. She recalled a time when she was hurt after she tried to grab father's arm to protect mother. Another time she hurt her finger while trying to retrieve mother's phone from father after father had grabbed it away from mother.

C.    *Temporary Restraining Order*

On January 24, 2025, the juvenile court granted mother's request for a temporary restraining order (TRO), which required father to move out of the shared residence in Pasadena and prohibited father from contacting mother and the child outside the parameters of court-ordered visitation. The TRO also required father to relinquish his firearms.

D.    *Section 300 Petition and Report*

On January 30, 2025, the Department filed the jurisdiction/ disposition report.  Mother stated that on November 14, 2024, she and the child were laying down on the mattress in the living room where they slept when father came home "'really, really drunk.'"  "'[H]e threw himself on the mattress on top of [her].  He was pinching [her] and [she] told him to go to the room to sleep.  He kept pinching [her].  [The child] saw that and he was extremely drunk.  [The child] got in front of him and [mother was] not sure in what moment he moved [the child] to the side.  [She did not] remember seeing but [she] remember[ed] [the child] start[ed] crying and [mother] looked at [the child's] leg and yes it was red.  He didn't leave to his room so [mother] got [the child] and we moved. . . .  [The child] grabbed [father] by the neck when he was on top of [them].  She was telling him to leave us alone.  To get off and leave mommy alone.  He didn't.'"

Father admitted to the social worker that he and mother had "'little fights in front of [the child]'" but denied ever hurting the child.

The manager of the hotel where mother worked described several incidents during which father came to the hotel "'under the influence of something,'" stalked and harassed mother, and threatened the manager and other employees who were "'scared of his behaviors.'"  The manager described one incident that occurred on December 20, 2024.  On that date, father came to mother's work and accused mother of having an affair with a coworker and screamed that mother was his "woman."  The manager reported that on two dates in January 2025, father called mother's place of employment, threatened an employee,

accused the employees of hiding mother, and threatened to kill mother. Father admitted going to mother's workplace on a few occasions, telling mother's manager that mother was having an affair with an employee, and attempting to confront the employee.

On January 22, 2025, the child reported that she felt safe at home with mother and M.M. and did not want father to come back.

On January 29, 2025, mother's eldest son B.C. told the social worker that father had violated the TRO. According to B.C., he drove to mother's home at 6:00 a.m. one morning and father was standing outside arguing with mother when he arrived. Father was drunk and attempted to prevent B.C., mother, and the child from leaving. Later that day, father showed up at the child's school when mother and B.C. were picking her up. B.C. told the social worker that father was aggressive and insulting to mother. B.C. explained that he "stayed the whole day with [mother] because [he] was afraid for . . . mother and [father] was next door drinking all day and [father] already was ordered to stay away from them" but did not comply with the order.

E.    *The Jurisdiction/Disposition Hearing*

On February 11, 2025, the Department filed an amended petition that alleged, as later sustained by the court, the following counts:

a-1 and b-1:  that mother and father have a history of engaging in violent verbal and physical altercations in the

presence of the child, which places the child at risk of serious physical harm, damage, and danger.

b-2: that father has a history of substance abuse and is a current abuser of alcohol, which renders father incapable of providing regular care and supervision of the child.

On that same date, the juvenile court conducted the jurisdiction/disposition hearing. It admitted the Department's exhibits, including the detention and addendum report and the jurisdiction/disposition report, into evidence.[2] Following argument, the juvenile court sustained the allegations, declared the child a dependent of the court, and ordered her removed from father, and placed in the home of mother.

F.      *Subsequent Order Terminating Jurisdiction*

On March 12, 2025, father timely filed a notice of appeal.

On July 18, 2025, at a section 364 hearing, the juvenile court terminated jurisdiction. The court entered an exit order granting mother sole legal and physical custody of the child and father monitored visits. The restraining order issued March 14, 2025 was to remain in effect. Father did not appeal from the exit order.[3]

---

[2]      The court admitted the exhibits with the exception of a social worker's description and summary of videos that were included in the detention report and the jurisdiction/disposition report.

[3]      Generally, once a juvenile court terminates jurisdiction, an appeal from an earlier order is moot. (*In re Rashad D.* (2021) 63 Cal.App.5th 156, 163.) Here, even if this appeal were otherwise

## III. DISCUSSION

We review the juvenile court's jurisdiction findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We draw all reasonable inferences in favor of the findings and orders of the juvenile court, and do not reweigh the evidence or reassess credibility. (*Ibid.*)

Section 300, subdivision (b)(1) authorizes the court to exercise jurisdiction over a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) "A jurisdiction finding under section 300, subdivision (b)(1), requires the department to prove three elements: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. [Citations.]" (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601.) "Exposure to domestic violence may serve as the basis of a jurisdictional finding under section 300, subdivision (b)." (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.) "[D]omestic violence in the same household where children are living *is* neglect; it is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it. Such neglect *causes* the risk." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)

Father contends the court should have dismissed the petition because "[t]he record does not support the allegations of

---

moot, for father's benefit, we describe why his appeal is without merit. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

8

the petition that [the child] was at ongoing risk of harm." In father's view, "[t]he issues facing th[e] family were not so serious that they required juvenile court intervention" and any disputes between the parents, including custody and restraining orders, could have been handled by the family court. We disagree.

Substantial evidence supports the juvenile court's conclusion that the child was at risk of suffering serious physical harm from incidents of domestic violence perpetrated in the child's presence. Father had perpetrated domestic violence against mother in the child's presence on at least three occasions. On March 29, 2019, while he was holding the four-week-old child, father pushed mother down on the bed, pulled her hair, pushed her against a dresser, and slapped her face. On October 12, 2024, mother and father got into a physical altercation in the kitchen in the presence of the child. On November 14, 2024, father came home drunk, threw himself on top of mother who was lying in bed with the child, and began pinching mother who told him he was hurting her. The child intervened and was injured as a result.

Father, however, contends that circumstances had changed between December 17, 2024, when the Department filed the petition, and February 11, 2025, when the juvenile court held the jurisdiction hearing, such that the Department could not meet its burden to show a current risk of substantial harm to the child under the new conditions. According to father, because he had moved out of the family home and mother had filed for divorce, the child was no longer at risk of harm.[4]

---

[4]    Although mother told a deputy and a social worker in late November 2024 that she was divorcing father, the record does not include any reference to another court exercising jurisdiction over the family.

9

As father concedes, he only moved out of the family home after the juvenile court ordered him to do so. Thus, the court could have reasonably found that absent the exercise of jurisdiction, the child remained at risk of harm. Indeed, even after the court's December 13, 2024, order removing the child from father, father continued to engage in disturbing acts of domestic violence. He harassed mother by appearing at her place of work and also harassed her by telephone. On January 24, 2025, the court found good cause to issue a TRO mandating that father stay away from mother and the child. Two weeks before the jurisdiction hearing, B.C. reported father stalking and harassing mother and the child at home and the school. Father's long history of domestic abuse and continued acts of domestic violence during the pendency of dependency proceedings demonstrated that the child continued to be at risk of harm at the time of the jurisdictional order. Having found that substantial evidence supported counts a-1 and b-1, we need not consider whether count b-2 was also supported by substantial evidence. (*In re Alexis E.*, *supra*, 171 Cal.App.4th at p. 451.)

Father challenges the disposition only on the basis that jurisdiction was improper. Because the juvenile court properly exercised jurisdiction under section 300, we affirm the disposition as well.

## IV.   DISPOSITION

The jurisdiction and disposition orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

11